Christian Abele, Respondent, *v.* Benjamin J. Falk, Appellant.

*Delay in constructing a machine — burden of accounting for the delay — proof that it was caused by the execution of work subsequently ordered is competent — competency of books and a bill as evidence.*

In an action brought to recover the value of services rendered by the plaintiff under an employment to design and construct a machine, which the defendant refused to accept upon its completion, it appeared that the plaintiff was distinctly informed at the time the contract was made that the machine was needed by the defendant for work to be done under a contract which he had at that time, and that the machine, in order to be of use to him, must be made at once; that the plaintiff agreed to build it as quickly as possible, and to do his utmost to hurry it along, it being understood between the parties that the time required would probably be but a few weeks. The time actually employed in its completion was six months.

----

*Held,* that, under these circumstances, the burden rested upon the plaintiff to account in some way for this great delay;

That it was competent for the defendant to prove that the delay had been occasioned, not by the difficulties of designing and building this machine, but because the plaintiff had accepted and executed orders for other work to the exclusion of the work upon this machine;

That the plaintiff's books were not competent evidence of the amount of time spent and material furnished in the construction of the machine, no testimony being given to establish their accuracy by any one who had personal knowledge of the time so spent, nor were entries made in the books kept by the plaintiff's bookkeeper from other books and memoranda handed to him by the plaintiff's employees, but not produced, as such books kept by the bookkeeper were · not books of original entry; nor was a bill admissible which had been made out from the plaintiff's books generally, their accuracy not having been proved by any competent evidence.

APPEAL by the defendant, Benjamin J. Falk, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of June,

---

necessary amount to complete the total purchase price of said jackasses up to the sum of $4,000 (four thousand dollars), and besides to pay all the expenses of transportation by railway and sea, together with the other incidental and necessary expenses, to assure the arrival and delivery of the stock in the said port of New York city from Vich to said destination," under certain conditions set forth in the said agreement. And it was provided and agreed that "for this service, and as compensation for advancing the funds for a service of this kind, Mr. Emerson shall pay to (the plaintiffs) the full sum of $1,500, without deduction for expenses."

The jacks were shipped from Vich to the French frontier, and then transshipped to Bordeaux. After some delay in Bordeaux they were sent forward by steamer to Liverpool and thence to New York, where they arrived on January · 31, 1894.

The proofs show that the plaintiffs did not fully perform their part of the agreement. The charges attending the shipment and transportation of the jacks from Vich to the frontier, or possibly to Bordeaux, were paid by them, and at Bordeaux the defendant received $200 from Ferrer, the plaintiffs' agent. Only to this extent did they keep their agreement "to pay all the expenses  *  *  * by railway and sea  *  *  * to assure the arrival and delivery of the stock in the said port of New York City." The port at which the jacks were to be put on steamer for New York was not specified in the agreement, but it was understood and agreed between the parties that they were to be shipped from Havre. It is said that, acting in accordance with that understanding, the plaintiffs provided funds at Havre to meet necessary expenses, but that the defendant, in violation of the understanding, sent the jacks from Bordeaux direct to Liverpool. There is no proof that funds were so provided other than the statement of Ferrer that Colberg told him so. It is undisputed that Ferrer refused to pay the freight

1896, upon the verdict of a jury, and also from an order entered in said clerk's office on the 22d day of June, 1896, denying the defendant's motion for a new trial made upon the minutes.

The action was brought to recover the reasonable value of services rendered and materials furnished by the plaintiff upon the alleged employment of the defendant in the creation, designing and construction of a certain machine, which machine the defendant refused to accept upon its completion.

*Samson Lachman,* for the appellant.

*J. Woolsey Shepard,* for the respondent.

INGRAHAM, J.:

There was evidence in this case admitted against the objection and exception of the defendant which seems to us to have been

---

from Bordeaux to Havre, and said that he could advance no more money either for freight or for other expenses, and that the defendant got no money from Ferrer or Colberg or Costa after leaving Bordeaux. The plaintiffs appeal to the provisions of the agreement by which, in order to secure them for their advances, the jacks were to be "invoiced from Vich to the port of embarkation in the name and as the property of Mr. Joaquin Costa," and that they should be shipped from that port "in the name of Mr. Herman Colberg, and shall be consigned to Messieurs. G. Amsinck and Company of New York;" and they claim that they were released from all obligations to furnish transportation and other moneys because the defendant violated those provisions by having the jacks sent forward from Bordeaux in his own name. The testimony shows that the jacks were shipped from Vich to the frontier in the names of Colberg and Costa, and from the frontier to Bordeaux in the name of Colberg. As I understand the agreement, the plaintiffs' obligation was to furnish whatever money was necessary to convey the jacks from Bordeaux to New York, without reference to the defendant's ability to procure funds from any other source. I do not agree with the learned counsel for the plaintiffs that "if the defendant could secure funds from home, at any time, he was certainly bound to do so." The plaintiffs were the first defaulters under the agreement. They refused to pay the freight on the jacks to Havre. It is not necessary to consider to what extent that refusal released the defendant from his stipulation to have the jacks invoiced or shipped in the name of Colberg. Whatever the defendant may have afterwards done in violation of the agreement did not excuse the plaintiffs' prior failure to perform on their part. Now the $1,500 was to be the plaintiffs' reward for doing all that they engaged to do by the said agreement. They did not perform or offer to perform in full, and so have no claim to the reward.

The defendant's counterclaim is not sustained. The plaintiffs are entitled to judgment for the said advances, with interest.

inadmissible, and the admission of which requires a reversal of the judgment. A determination of the question as to the right of the plaintiff to recover under his contract, and as to whether the plaintiff proved that he built the machine as quickly as possible, and did his utmost to hurry it along, and build a successful machine, is not required on this appeal, as the facts upon a new trial, when only competent and proper evidence has been admitted, may present an entirely different question for determination, and it will be sufficient in disposing of this appeal to call attention to various rulings upon evidence which we think were erroneous. The court charged at the request of the defendant that "while the plaintiff cannot be required to drop other work which he had on hand at the time, still, if he accepted new orders, and neglected the present order in filling the new ones, he cannot recover." But upon the trial the court again and again refused to allow the defendant to prove what new orders the plaintiff received after the making of the contract in question. The defendant asked the plaintiff upon cross-examination: Q. "I will ask you, Mr. Abele, to examine your book showing the work done, and state what other orders you had during the month of July, 1893." This was objected to by counsel for the plaintiff, the objection sustained and an exception taken. Other questions were asked as to each of the succeeding months, from July, 1893, to January, 1894, to which objections were also made and exceptions taken. The witness was also asked to state what work was done under contracts made after the contract with the defendant, which was also excluded. Subsequently the court allowed some evidence to be given as to contracts in existence at the time that the contract with the defendant was made, but the court again excluded all evidence of new contracts after the contract between the plaintiff and defendant was made, and what work was done by the plaintiff under such new contracts. We think the exclusion of this testimony was clearly erroneous. Prior to the time of making the contract with the defendant, the plaintiff or his agent had been distinctly informed that this machine was needed by the defendant for work to be done under a contract which he had at that time, and that the machine, to be of use to him, had to be made at once. The evidence shows that the defendant again and again insisted upon the necessity of having the machine completed within a short time;

and it was in view of this necessity of the defendant that, while the plaintiff said it would be impossible for him to state just how long it would take him to make the machine, as a part of his contract to make it, he agreed that he would build the machine as quickly as possible, and do his utmost to hurry it along. This agreement required greater dispatch by the plaintiff in the performance of his contract than the reasonable time which is allowed to a contractor to complete a contract, where nothing is said as to the time within which it shall be completed ; and it would clearly be a violation by the plaintiff of his contract with the defendant if, after the making of this contract, he should accept other work and devote his attention to it, so that the performance of his contract with the defendant should be postponed until such other new contract had been completed. The defendant, I think, was entitled to show what other work the plaintiff had undertaken after the contract between the parties to this action, and that the completion of such other work had interfered with the prompt execution of his contract with the defendant. The whole testimony shows that this contract was based upon this agreement with the plaintiff to do the work as rapidly as possible, and not as rapidly as the convenience of the performance of such other contracts as the defendant might make required.

The defendant was entitled to have the plaintiff do all that he could do to complete this machine promptly, and if the plaintiff failed in the performance of that obligation he did not perform his contract, and would not be entitled to recover. While no special time was fixed within which this machine was to be completed, it was clearly understood between the parties that the time that would be required would be but a few weeks. The plaintiff's representative, with whom the contract seems to have been made, and who was called by the plaintiff his inventor, first stated to the defendant that the contract would take from three to four weeks, and subsequently stated that some further time would be required, but at no time was it stated as more than eight weeks. On August twenty-third, about one month after the contract was made, the plaintiff's representative wrote to the defendant that he could not tell within one day when he expected to deliver the machine, "but it may take yet about ten days," having on July twenty-ninth, eight days after the contract was made, stated to the defendant that by the following Monday

morning the plans for the machine would be completed in all its details, so far as necessary for building the machine. That the order given by the defendant was based entirely upon these representations by the plaintiff, or his representative, is clear, and that no order would have been given had it been intimated by the plaintiff that it would take six months to complete the machine. Under these circumstances, it was necessary for the plaintiff to account in some way for this great delay, so largely exceeding the time the defendant stated as the time it would take to complete the machine; and it was certainly competent for the defendant to prove that this delay had not been occasioned by the difficulties of designing and building this machine, but had been occasioned by the fact of the plaintiff's accepting orders for other work, and by his devotion to such other work to the exclusion of the work under his contract with the defendant, in which he had promised that he would build the machine as soon as possible and do his utmost to hurry it along.

We think, also, that the plaintiff's books, admitted by the court as evidence of the amount of time spent and materials furnished, were incompetent. None of these books were properly proved. Those that were produced as timebooks of the plaintiff's employees to show the time that such employees spent upon this particular machine were not proved by the persons who made the entries. None of the workmen were called who worked on the machine, and no one testified to their accuracy, who appeared to have had personal knowledge of the amount of time that was spent upon the machine. Other books were produced, being the books kept by the bookkeeper, who testified that he made the entries in these books from other books and memoranda handed to him by the plaintiff's employees, which were not produced. These books were not books of original entry, and the only evidence of their accuracy was the evidence of the bookkeeper who made the entries, and who testified that they were correct entries. The accuracy of these books and memoranda was not satisfactorily established. These books thus kept by the plaintiff were introduced as evidence against the defendant to show the time that unnamed workmen had devoted to these machines. They were merely the unverified statements of the plaintiff's employees, the accuracy of which was not proved, and such statements were clearly incompetent evidence as against this defendant

to prove that such unnamed individuals devoted any particular time to the completion of this contract between the plaintiff and the defendant. A bill made out by the plaintiff against the defendant in the name of a corporation of which the defendant was president was also offered in evidence, and admitted against the objection and exception of the defendant. This bill was clearly inadmissible. It purported to have been made out generally from the plaintiff's books, and its accuracy was entirely unproved by any competent evidence.

There were other rulings upon testimony which we think were erroneous, but as the evidence which we think was erroneously admitted, as above indicated, was a substantial part of the proof offered by the plaintiff to prove his cause of action, it is sufficient for us to say that these rulings above referred to require a reversal of the judgment.

The judgment appealed from is, therefore, reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., BARRETT, RUMSEY and O'BRIEN, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.