CLARK v. NATIONAL SHOE & LEATHER BANK OF CITY OF NEW
YORK.

(Supreme Court, Appellate Division, Second Department.    July 11, 1898.)

1. BANKS—NEGLIGENCE OF DEPOSITOR—FORGED CHECKS.
   In an action by a depositor against his bank, it appeared that his book-
   keeper, whom he had every reason to trust, had devised an ingenious
   scheme of fraud, by which, after procuring his employer's signature to
   checks for the pay roll, he raised the checks to substantially larger
   amounts, cashed them, retained the excess, and when the checks were re-
   turned as vouchers, with a statement, he reduced them to the original
   amounts, and altered the statement to correspond, and reported their cor-
   rectness to his employer, who also had an expert accountant examine the
   accounts monthly.    The latter merely compared the vouchers with the
   check book, and reported that the accounts were straight.    Even if he
   had examined the statements, he would not have discovered any discrep-
   ancy.    *Held*, that the depositor was entitled to rely on the reports made to
   him, and that his failure to personally examine the vouchers and state-
   ments, or the accountant's failure to examine the statements, did not con-
   stitute negligence as against the bank.

2. SAME—CARE REQUIRED.
   The only method of discovering the forgeries would have been to com-
   pare the vouchers with the books kept by the bank.    *Held*, that such a
   precaution would have been extraordinary care, and that no duty de-
   volved upon the depositor to go to that extent.

3. SAME—PROVISIONS OF PASS BOOK—ERRORS AND IRREGULARITIES.
   The pass book contained a statement that, "unless notice of any errors,
   irregularities, or vouchers is given within ten days, the account will be
   regarded as conclusively stated and adjusted at the balance found due
   as per pass book."    The slips of returned vouchers stated that "reclama-
   tion for errors and all objections to entries made or to vouchers returned
   should be made with due diligence."    *Held*, that forgery was scarcely em-
   braced within the term "errors and irregularities," and that, in any event,
   it was modified by the notice on the slips, which only required due dili-
   gence.

4. WITNESS—ACCOUNT BOOKS—REFRESHING MEMORY.
   It appeared that, at the times when the checks were drawn, the plain-
   tiff then knew their amounts, verified them with the amounts of the items
   they were drawn to pay, and thereafter saw they were properly entered
   in the petty cash book, and examined the entries therein, with the items
   and amounts of the checks before him, and was able to testify that, at
   the time of the entries in the book, they were correct, and that their pres-
   ent condition remained as originally entered.    *Held*, that this entitled the
   plaintiff to make use of the book, both to aid his recollection, and, if from
   such examination he had a recollection independent of the book, to testify
   to such fact.

5. SAME.
   It seems that when a witness has so far forgotten the facts that he can-
   not recall them even after looking at a memorandum of them, and he tes-
   tifies that he once knew them, and that when the memorandum in ques-
   tion was made, at the time, even though not by himself but by his book-
   keeper, in the ordinary course of business, he verified the same, and knew

at the time that its statements were true and correct, and that they still remain as originally made, the entries themselves become admissible as evidence.

Appeal from trial term, Kings county.

Action by John W. Clark against the National Shoe & Leather Bank of the City of New York. The pass book issued by the defendant bank to the plaintiff contained a statement that, "unless notice of any errors, irregularities, or vouchers is given within ten days, the account will be regarded as conclusively stated and adjusted at the balance found due as per pass book." The slips of vouchers returned to him by the bank stated that "reclamation for errors and all objections to entries made or vouchers returned should be made with due diligence." From a judgment for plaintiff for $2,406.10, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

James L. Bishop, for appellant.
O. B. Gould, for respondent.

HATCH, J.   This case presents a vivid illustration of the ingenuity developed and applied in the commission of criminal acts.   It shows that, however numerous be the checks devised for the prevention and detection of irregular and criminal acts, the skill of the wrongdoer keeps pace with and outwits them.   The misapplied ability which furnished the occasion for this action, rightly directed, would undoubtedly have brought to the individual abundant success and honor in an honorable employment.   As is usual, however, it brought him disgrace and a prison.   The plaintiff is a business man; the defendant a banking corporation.   About 1894 the plaintiff employed one Marius J. Lamothe as his bookkeeper and cashier.   In 1895, Lamothe began a series of forgeries of checks drawn by the plaintiff upon the defendant, with whom he kept his bank account.   These forgeries appear to have begun in March of that year, and continued until July of the following year, before they were detected.   The claim of the plaintiff is that the method by which the forgeries succeeded was this: For the purpose of obtaining the amount necessary for the pay roll at particular times, Lamothe furnished the plaintiff with the items of the same upon a pad of paper; and thereupon the plaintiff directed Lamothe to fill up a check for the amount, drawn upon the defendant. When the check was presented, the plaintiff verified it, signed and indorsed it, and delivered it to Lamothe, to obtain the money.   The plaintiff retained the slip until he had verified its amount with the entries of the transaction in the petty cash book, kept by the bookkeeper, when he destroyed it.   This verification was usually made on the Monday following the drawing of the check, and was made upon each occasion.   Lamothe in many instances raised the checks thus received in the sum of $50 or $100, and received the money from the bank.   All of the checks thus raised represented the sums for the weekly pay roll except in a few instances, when checks were drawn for the personal use of the plaintiff, and twice when checks were

drawn by a brother of the plaintiff, under power of attorney.    But in each of these instances the entries were made in the petty cash book, and were verified by the plaintiff or his brother.    When the bank returned the checks, at stated intervals, they were delivered to Lamothe; and he restored the raised checks to the original amounts for which they were drawn, doing this in so skillful a manner that only the closest scrutiny sufficed to detect the alteration.    The checks which are the subject of this action (21 in number) were thus altered when presented to the bank, and were restored when returned by it.    Four checks were raised, and paid by the bank as raised, which were not restored.    These were the last of the series of forgeries.    When the bank returned the paid checks, it rendered a statement of the same, and the amounts paid thereon.    Of these statements, the plaintiff was able to produce but two, one showing payments between February 11, 1895, and May 31, of the same year, inclusive; the other, between March 28, 1896, and July 27, of the same year.    The last statement was made when the forgeries were discovered.    Both of these statements show payments of raised checks, and the first of them shows a change in amount of the figures of the raised checks as paid by the bank to correspond with the change in the check itself; the theory of the plaintiff being that Lamothe, in each instance, changed the bank statements of checks paid so as to make the amount correspond with the check as originally drawn, and as restored by him when received from the bank.    In all cases except the four checks which were raised and not restored, and the last statement from the bank of checks paid, both checks and statements came into the hands of Lamothe, and all show the alterations.    Taking the amount for which the 21 checks were drawn, the amount paid by the bank, and their present appearance, it is evident that these checks have been altered twice,—first raised, then restored.    The first statement produced by plaintiff has also been altered; and as the last statement was not altered, nor the four returned raised checks restored, and all checks were in the handwriting of Lamothe, who had charge of the transactions, it would seem a fair inference that the forgeries were committed by Lamothe.    The plaintiff received none of the money represented by the amount of the raise in any of the checks, nor did he authorize such payment.

Assuming for the moment that the testimony of the plaintiff was competent upon this branch of the case, it, with the circumstances surrounding the transactions, was sufficient to warrant the court in finding that the overpayments were made to Lamothe, that they were unauthorized by the plaintiff, and that he remained in ignorance of such payments until notified by the bank, in July, of his overdraft. The legal effect of such finding is to charge the bank with liability for such amounts, unless it be discharged by reason of the existence of other matters.    It is insisted that it is so excused for the reason that the plaintiff owed to the bank a duty of examination of the vouchers and statements returned by the bank containing a list of paid checks, and that he did not exercise due diligence in this regard, with the result that he is now estopped from asserting liability against the bank. We may assume that if the plaintiff negligently omitted to make any

examination of his account and vouchers as returned from the bank, and that such examination would have disclosed the forgery, then he would be estopped from questioning the accounts as rendered. Frank v. Bank, 84 N. Y. 209. This duty, however, to examine accounts and vouchers returned by the bank, calls for no more than the exercise of ordinary care. There is no duty resting upon the depositor to personally examine the vouchers and accounts. He may intrust the matter to employés who have proved themselves competent and trustworthy, and it may be to the person who has committed the forgery if there exists no knowledge of his wrongdoing, and the depositor is justified in reposing confidence in him. Frank v. Bank, supra; Shipman v. Bank, 126 N. Y. 318, 27 N. E. 371; Wachsman v. Bank, 8 Misc. Rep. 280, 28 N. Y. Supp. 711; Harlem Co-op. B. & L. Ass'n v. Mercantile Trust Co., 10 Misc. Rep. 680, 31 N. Y. Supp. 790. In the present case it did not appear that the plaintiff had any reason to suspect his bookkeeper of any wrongdoing. He had come to him well recommended, and he was justified in reposing confidence in him. Nothing had transpired, so far as is disclosed by the record, which was calculated to raise any suspicion as to his integrity or faithfulness; and, under the authority of the foregoing cases, the court would have been authorized to conclude that plaintiff might, in the discharge of his duty to the bank, have intrusted the examination of the vouchers and statements returned by the bank to the bookkeeper, and have relied upon his statements. In respect of the bookkeeper's wrongdoing, he was in no sense the agent of the plaintiff, and his knowledge would not be attributable to the plaintiff. Henry v. Allen, 151 N. Y. 1, 45 N. E. 355.

The plaintiff, however, employed an expert accountant to examine his books every month, and report to him the result of such examination. This accountant went through the books, and examined the returned vouchers with the check book; and, when he found that the vouchers returned by the bank agreed with the checks as drawn, he did not examine further. He did not examine the statement of paid checks returned with the vouchers, and herein it is claimed lies the negligent omission. In respect to this matter, we think that the plaintiff had discharged his full duty to the bank when, in addition to information from his bookkeeper, he employed an expert, and was informed by them that his accounts were correct. Plaintiff could not personally examine them for want of time, and, to some extent, from lack of knowledge. He had the right to assume that the bank would not pay a check for a larger amount than he had authorized. Weisser v. Denison, 10 N. Y. 68; Welsh v. Bank, 73 N. Y. 424. And when the plaintiff had taken steps, by the employment of competent persons, to apprise him of the true state of his business and accounts, we do not think that he can be charged with negligence or the omission of ordinary care, even though the examination by the employé was not carried as far as it might have been. In addition to this, the court was authorized to find that the forgeries were so skillful in character, and the changes so extensive, as to involve the list of paid checks; that an examination of the list would have imparted no further information than was obtained from the returned checks. The only cer-

tain method of detection was to take the vouchers, and compare them with the books kept by the bank. This would have disclosed the forgery. But it would have been extraordinary care, beyond such as is usually taken, and is not required by any rule of law known to us. No duty devolved upon the plaintiff to go to this extent. We think the court below was right in acquitting the plaintiff of negligence for failure to examine the account as returned. The notice in the pass book did not create a short statute of limitations upon the right to reopen the account. It is quite doubtful if the notice itself embraces a loss covered by a forgery. Payment of such a check is a positive wrong, and is scarcely embraced within the terms "errors and irregularities." Whatever its effect, and assuming that the plaintiff had notice of it, it was clearly modified by the notice attached to the slips of paid checks. Discovery of errors therein and in the vouchers, and notice to the bank of the same, were only required to be made with due diligence. In this, as we have seen, the plaintiff did not lack.

It is further claimed that there was no competent proof establishing the fact that the 21 checks were drawn and signed by the plaintiff for a less amount than that paid by the bank. The basis of this objection rests in the claim that the plaintiff had no recollection of any particular check, aside from the entry of the amount and items in the books. Let us assume (what is the claim of the plaintiff) that there did not exist in the mind of the plaintiff an independent recollection of the transaction, or of either or any of them, so far as related to the amount of the check, either while looking at the books or after; and we do not think, with this assumption, that the claim can be upheld. The examination fairly established that, at the time when the check was drawn, the plaintiff then knew its amount, verified it with the amount of the items it was drawn to pay, and thereafter saw that it was properly entered in the book, and examined the entry therein with the items and amount of the check before him, and was able to testify that at the time of the entry it was correct, and that the present condition of the entry remained as originally entered. This, as we view the law, entitled the plaintiff to make use of the book for two purposes: First, to aid his recollection, and, if from such examination he had a recollection independent of the book, to testify to such fact. This constitutes common-law evidence. Bigelow v. Hall, 91 N. Y. 145.

So far as the answers of the plaintiff are concerned, they are to the effect that, after an examination of the check and the entries connected with it, he was able to state the amount for which the check was originally drawn. It is not entirely clear that these answers were destroyed by the cross-examination upon that subject. While the witness stated that, apart from the cash book and memoranda, he had no recollection, yet, when they were before him, he stated that he had. It might well be that a person could not state a single matter aside from the books, except, generally, that he had transactions of that character, and yet from the books, knowing of the transactions, he would then have a recollection or be able to state positively that such a transaction was had. Of course, an honest witness, except he have a phenomenal memory, must state that as to date,

amount, and detail he has no recollection aside from the entries themselves, and yet when he states that with them he recollects that the transaction, as therein set forth, took place, his testimony is competent upon that subject.   Wise v. Insurance Co., 101 N. Y. 637, 4 N. E. 634.

Second. Adopting the claim of the defendant, as above stated, the witness was competent to testify even though he had no independent recollection, and to read, in connection with his testimony, the entry itself.   The rule is formulated in Howard v. McDonough, 77 N. Y. 592, in these words:

"When a witness has so far forgotten the facts that he cannot recall them, even after looking at a memorandum of them, and he testifies that he once knew them, and made a memorandum of them at the time or soon after they transpired, which he intended to make correctly, and which he believes to be correct, such memorandum, in his own handwriting, may be received as evidence of the facts therein contained, although the witness has no present recollection of them."

This rule seems to arise out of the necessity of the case, and is only available when the recollection fails.   Bank v. Madden, 114 N. Y. 280, 21 N. E. 408;  People v. McLaughlin, 150 N. Y. 365, 44 N. E. 1017. The above-quoted rule seems to limit its application to a case where the witness has made the memorandum himself with his own hand. It is evident, however, that the reason of the rule admits of a broader application.   It must be equally reasonable that a witness might so testify with respect to a memorandum made by another.   The essential fact is, did the witness know at the time when the memorandum was made that the statements contained therein were true, and correctly represented the transaction it purported to represent?   If the plaintiff directed his bookkeeper to make these entries, or he made them in the usual course of business, and the plaintiff saw them entered, and then knew them to be correct, or if, within a short time thereafter. he examined them with a present recollection of the facts, and then knew them to be correct entries, and so testified, it is manifest that the memorandum would be admissible, although nothing appeared written by the hand of the witness.   He would then know, equally with the person who made the entry, that, at the time it was made, it was true, and this is the fact, coupled with loss of memory, upon which the entries become admissible as evidence.   That such is the rule appears to be the purport of the authorities.   Krom v. Levy, 1 Hun, 171;  Lamberty v. Roberts, 9 N. Y. Supp. 607;  McGoldrick v. Traphagen, 88 N. Y. 334.

In the present case the witness stated that every week the office expenses were figured upon a pad, which was presented to him by the bookkeeper, and he marked the sum for which the check was to be drawn, and handed the slip to the bookkeeper, who drew the check, and brought it to him; that he then compared the slip and check, signed and indorsed the check, and delivered it to the bookkeeper. The slip plaintiff retained until he had compared and checked off with the entries in the cash book, which he usually did on the Monday following.   The slip was always kept until the comparison was made, and was then destroyed.   This is something entirely different from the unsworn declarations of the bookkeeper.   The entries as thus

made were of the transaction, to the knowledge of the plaintiff, who verified them from the original memoranda, which he retained. Thus, his knowledge was fully equal to that possessed by the bookkeeper upon that subject, and qualified the entries as evidence if there was failure of memory. It is true that the books were not introduced in evidence. They were, however, before the court. The items themselves were the subject of examination by the witness and of cross-examination by the defendant's counsel. There was nothing in any respect to discredit the entries. They appeared to have been made in the regular course of business. Within the rule of the cases we have cited, we think the court was authorized to permit the plaintiff to refer to the books, and to give the testimony which was received. There are no other questions in the case which require attention.

The judgment should be affirmed, with costs. All concur.