Charles L. Rathborne, Respondent, *v.* Edward Hatch, Appellant.

*Broker's books of account — proof of, required to make them admissible in evidence — rule as to merchant's books of account, considered.*

In an action brought by the plaintiff, as assignee of a firm of stockbrokers, the plaintiff claimed that the defendant had employed the stockbrokers to sell a number of shares of stock for him; that the stockbrokers did so, but that the defendant neglected to deliver to them the stock with which to fulfill the contract of sale; that the stockbrokers were consequently obliged to purchase the stock and that, as a result of the transaction, the defendant was indebted to them in the amount to recover which the action was brought.

Upon the trial a member of the firm of stockbrokers, who sold and purchased the stock in question on the stock exchange, testified that he gave the figures to the telephone clerk on the exchange for the purpose of having the same telephoned to the office of the firm of stockbrokers according to custom. The bookkeeper of such firm testified that he made entries of these transactions in the firm books from information received by telephone from the telephone clerk and that the entries were in accordance with the information thus received. The telephone clerk was in court, but was not called or sworn as a witness and there was no evidence that he correctly transmitted the information received.

No proof was given by any persons who had dealt with the firm of stockbrokers and had settled by their books to the effect that the firm kept fair and honest accounts.

*Held,* that it was error at this stage of the proof to receive in evidence the books of the firm of stockbrokers as evidence of the amounts at which the stock in question had been sold and purchased;

That the rule relating to the admission of shop books of services rendered or the sale and delivery of merchandise on credit did not apply to the account books of a broker showing sales to and purchases from third parties in an action between him and his principal;

That, even if such rule was applicable, it would not be available to the plaintiff, as no proof had been given as to the fairness and honesty of the books kept by the firm of stockbrokers.

*Semble,* that if it appeared that the broker who made the sale and purchase of stock was unable to recollect the terms thereof, but had examined the entries made in the firm books at a time when he did recollect the figures, so that he knew that the entries were correct, and also that an examination of the books would not refresh his recollection so as to enable him to testify to the figures, or if the telephone clerk had been sworn and had testified that he correctly transmitted the information to the bookkeeper as he received it from the broker, the books would have been competent evidence.

O'Brien, J., dissented.

Appeal by the defendant, Edward Hatch, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of March, 1902, upon the decision of the court rendered after a trial at the New York Trial Term before the court without a jury.

*Edward W. S. Johnston,* for the appellant.

*George E. Morgan,* for the respondent.

Laughlin, J. :

The action is brought on an assigned claim of C. L. Rathborne & Co. for a balance alleged to have been due and owing to them from the defendant on account of certain stock transactions. The precise claim is that Rathborne & Co. were employed by the defendant to sell 900 shares of the capital stock of the Northern Pacific Railway Company and 200 shares of the capital stock of the Chicago, Burlington and Quincy Railroad Company ; that they sold the stock and notified the defendant of such sale and requested that he deliver the stock to them to fulfill the terms of their sale ; that he failed to do so within a reasonable time and they were obliged to purchase stock in order to make the delivery to the purchaser ; that thereby the defendant became liable to them for their commissions and the difference between the amount for which they sold the stock and the amount they were obliged to pay for stock to fulfill the terms of sale aggregating the sum of $17,155.78, together with interest thereon from the 9th day of March, 1900, besides costs. The answer put in issue the material allegations of the complaint and set up a counterclaim for damages. The principal question presented on the appeal relates to an exception to the introduction of the account books of Rathborne & Co. as evidence of the sales of the stock by them and of the selling price, and of the purchase of the stock by them and of the purchase price. The bookkeeper of Rathborne & Co. testified that he sent notices by mail of the purchases and sales to the defendant and kept copies thereof ; but it appeared that he did not mail the notices, but delivered them to a boy for that purpose and had no personal knowledge as to whether they were mailed or not. It might be inferred, however, from a letter which the defendant wrote Rathborne & Co. on

the 18th day of July, 1900, that he had in some manner received information concerning these transactions, for in the letter he acknowledged that he was indebted to them and promised to settle. Nevertheless his letter throws no light on the question as to the amount of the indebtedness and no evidence was offered tending to show that he had knowledge of the precise amount of their claim or of any other admission on his part concerning the same. If the plaintiff had shown the mailing of an account by Rathborne & Co. to the defendant of the purchases and sales and of their claim for commissions showing balance owing, it might be inferred that the defendant's letter related thereto and constituted an admission of the correctness thereof; and if he retained the statement of the account without objecting thereto after reasonable opportunity to examine the same and discover any error, it probably would have constituted an account stated. (*Spellman* v. *Muehlfeld,* 166 N. Y. 245.) But neither of these things was shown. Proof was made of the employment of Rathborne & Co. to make the sales; that the sales were made pursuant to such employment; that the defendant failed to furnish stock for the purpose of making delivery to the purchaser, and that Rathborne & Co. purchased stock for that purpose. There was, however, no evidence other than the account books of the prices at which the stock was sold and the purchases were made. The member of the firm who made the sales and purchases on the Stock Exchange testified that he gave the figures to the telephone clerk on the exchange for the purpose of having the same telephoned to the office of the brokers according to the custom; and the bookkeeper testified that he made the entries of these transactions in the books from information received by telephone from the telephone clerk, and that the entries were in accordance with the information thus received. The telephone clerk was in court but was not called or sworn as a witness; and there was no evidence to show that he correctly transmitted the information received. In this state of the proof the books were offered and received in evidence over the defendant's objection that they were incompetent and hearsay; that a proper foundation had not been laid for their introduction, and the particulars in which this foundation had not been laid were specifically and fully stated in the objections, and, among other things, that it had not been shown that Rathborne &

Co. kept fair and honest accounts, and also that the rules admitting account books were not applicable to principal and agent. We are of opinion that the reception of these account books was error, and there being no other basis for the recovery the judgment cannot stand.

If it appeared that the broker who made the sales was unable to recollect the terms thereof, but had examined the entries made in the books at a time when he did recollect the figures so that he knew that the entries were correct and also that an examination of the books would not refresh his recollection so as to enable him to testify as to the figures, or if the telephone clerk had been sworn and testified that he transmitted the information to the bookkeeper correctly as he received it from the broker, then doubtless the books would have been competent evidence in connection with the other testimony to show the essential facts. (1 Greenl. Ev. [16th ed.] §§ 120a, 120b ; *Bank of Monroe* v. *Culver*, 2 Hill, 531 ; *Merrill* v. *Ithaca & O. R. R. Co.*, 16 Wend. 586 ; *Clark* v. *National Shoe & Leather Bank*, 32 App. Div. 323 ; affd., 164 N. Y. 498 ; *State National Bank* v. *Weed*, 39 App. Div. 604 ; *Powell* v. *Murphy*, 18 id. 25 ; *Abele* v. *Falk*, 28 id. 191 ; *Bloomington Mining Co.* v. *Brooklyn Ice Co.*, 58 id. 66 ; affd., 171 N. Y. 673 ; *Mayor* v. *Second Ave. R. R. Co.*, 102 id. 579.) The proof, however, was insufficient to make them admissible upon either of these grounds. The only other theory upon which they could in any view be admissible, as not obnoxious to the rule against hearsay evidence and evidence made by a party in his own behalf, is that they fell within the rule relating to the admission of shop books of services rendered or the sale and delivery of merchandise on credit. This rule has been somewhat extended, but no authority has been cited, and we find none in this State, extending its application to purchases from or sales to third parties by an agent in an action between him and his principal. It has been held not to apply to accounts of cash items or transactions even between the parties. (*Dusenbury* v. *Hoadley*, 49 N. Y. St. Repr. 560 ; *Smith* v. *Rentz*, 131 N. Y. 169.)

In *Congdon & Aylesworth Co.* v. *Sheehan* (11 App. Div. 456) it was held that this rule was not applicable to the account books of a corporation and that such books were not admissible as evidence of sales or deliveries. In *Shipman* v. *Glynn* (31 App. Div. 425,

430) it was held that the account books of a party are not admissible as evidence of sales and delivery of goods where the delivery was made upon his order, but by a third party. The Court of Appeals in *Smith* v. *Rentz* (*supra*) expressly declares that this rule should not be extended. It would appear, therefore, that this rule should not apply to the account books of a broker, showing sales to and purchases of third parties, in an action between him and his principal. But if the rule were applicable it would not avail the plaintiff. The rule as originally promulgated in the leading case of *Vosburgh* v. *Thayer* (12 Johns. 461) required proof as a foundation for the introduction of the books, *first*, that the party had no clerk; *second*, that some of the articles sold had been delivered; *third*, that they are the account books of the party, and, *fourth*, by persons who have dealt with him and settled by his books, that the party keeps fair and honest accounts. Where this rule is applicable the courts have rigidly adhered to the requirement that this preliminary proof must still be made before the books are admissible as evidence. (2 Rice Ev. 815; *Matter of McGoldrick* v. *Traphagen*, 88 N. Y. 334; *Smith* v. *Smith*, 163 id. 168; *Smith* v. *Rentz*, *supra*; *Stone* v. *Cronin*, 72 App. Div. 565; *Powell* v. *Murphy*, *supra*.) It was shown that the account book received in evidence was the purchase and sales book of Rathborne & Co., and it probably sufficiently appeared that they kept no clerk within the contemplation of this rule which relates to a clerk who has personal knowledge of the transactions. (*Smith* v. *Smith*, *supra*, and *Matter of McGoldrick* v. *Traphagen*, *supra*), but there was a complete failure of evidence that Rathborne & Co. kept fair and honest books by any person who had dealt with them and settled by their books.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

PATTERSON and McLAUGHLIN, JJ., concurred; VAN BRUNT, P. J., concurred in result; O'BRIEN, J., dissented.

O'BRIEN, J. (dissenting):

In his answer the defendant admitted that he authorized the firm of C. L. Rathborne & Co. to sell short 900 shares of the Northern Pacific Railway Company and 200 shares of Chicago, Burlington and Quincy Railroad Company stock and averred that thereafter

without his consent, authority or knowledge such firm bought in for his account the same stock. The answer further alleges that if the firm sold and thereafter purchased the stock, it was done without the consent, knowledge or authority of defendant and without previous notice of intention so to do to defendant. Upon the trial the defendant made no defense, introducing no evidence, and placed his reliance mainly upon what he could find vulnerable in the plaintiff's case. Taking the form of the answer, supplemented as it was by testimony that was unobjectionable, and enforced by the defendant's letter admitting liability, there was sufficient foundation for the inference that by authority and with knowledge of the defendant, the plaintiff's firm had first sold short and thereafter bought in, to cover for the account of the defendant, the stocks in question.

What remained in doubt were the prices at which the stocks were sold and the purchases made; and for the purpose of fixing such prices, the only evidence of which, it seems to me, the case was susceptible was introduced, namely, the account books of the firm consisting of the original entries made by the bookkeeper who had charge of making them and who testified that they were made at the time from information given him by the telephone boy in the office who received it from the telephone messenger in the exchange who, in turn, received the information from the exchange member of the firm. This testimony was corroborated by the plaintiff, who was the exchange member and gave the information. The two telephone boys were not called, but to do so would have been a useless formality, because from the nature of the transactions it would be impossible for them in the ordinary run of business to remember any particular transaction upon a particular day, and more especially would it be impossible for them to recall the prices at which the stocks were sold and subsequently purchased and which they sent and received over the telephone and gave to the bookkeeper. The telephone clerks were but part of a system or means of communication between the exchange member of the firm and the bookkeeper by which the former was enabled to communicate his transactions on the exchange to his office. It would be as idle to call them as it would be, with reference to the sending of a letter or telegram, to call the postman who regularly receives and delivers written messages, or the telegraph operator who regularly forwards and

delivers communications by wire, because neither of the clerks could add any certainty to the testimony of the plaintiff who made the sale or purchase on the exchange, supplemented by the testimony of the bookkeeper who received the information thereof, and, as part of the transaction, entered it at the time in the firm's books.

I agree with Mr. Justice LAUGHLIN that the rule that obtains with reference to introducing shopkeepers' and tradesmen's books in evidence has no application, and for the simple reason that such a rule, if applied to the books of account of large business enterprises, would, in nearly every instance, operate as a denial of justice.

The old common-law rule of evidence as to tradesmen's books is no longer applicable to most of our modern methods of carrying on large and extensive business transactions. The position of the ancient shopkeeper, who himself sold and delivered his goods direct to the customer, and who made his own memoranda in books, was enlarged when, with the increase of business, he was obliged to employ a bookkeeper or a clerk, and to resort to entries in books of account made by the clerk or bookkeeper, because in no other way could he keep track of the growth in his business. With the introduction of department stores, embracing a number of different kinds of trade, and the formation of exchanges, with their indefinite extension of daily transactions, and of large corporations, whose business is conducted through numerous agencies, the old rule with respect to them can have no place, and it is useless longer to refer to it as in any sense applicable to such modern methods of doing business. It is inconceivable, with the growth in every other direction, that the law itself should not grow so as to meet the changed conditions, and it seems to me in such a case as this a waste of time to expend labor in the discussion of old rules which can have no possible bearing upon, or application to, the reasons or principles which should govern in determining the extent to which books of account, such as are here involved, may be resorted to as evidence.

It is, of course, necessary that a proper foundation for their introduction should be laid in order that their verity may be established, but when this is done by the most complete and satisfactory proof which from the nature of the business can be obtained, then the reason which permits the best evidence to be given should be held as applicable to such books of account, properly authenticated, as to

any other kind of evidence. I think, therefore, that where a proper foundation is laid, as in this case, for introducing entries in books of account of the nature and character of those here involved, and which are resorted to merely for the purpose of fixing the items or prices at which the stocks were sold and bought, they are competent. To render them admissible for that purpose, it must be shown that the entries are original entries, proven to be such by the person who made them, in the usual course of business, made at the time the transactions they recorded took place, and are a true and correct record of such transactions. I think that such a foundation was laid in this case, and that under the authorities, as it was the best evidence of which the case was susceptible, such entries were not hearsay, but were original evidence, and, therefore, admissible for the purpose for which they were introduced. (*State Bank of Pike* v. *Brown*, 165 N. Y. 216; *Mayor* v. *Second Ave. R. R. Co.*, 102 id. 572.)

I dissent, therefore, from the conclusion of the majority of the court, thinking as I do that, where there was a virtual admission of the transactions having occurred, and all that was required from the books was a definite statement of the prices at which the stock was sold and bought, it was competent, because it was the best evidence of which the case was susceptible, to permit resort to the books for the purpose of ascertaining such prices.

Judgment reversed, new trial ordered, costs to appellant to abide event.