Ingraham, J.:
• The complaint alleges that between the 1st day of January, 1899, and the 10th day of March, 1900, the firm of C. L. Rathborne & Co., at the request of the defendant, and upon his promise to pay them for their services in his behalf, bought and sold for and on his account at various times 900 shares of the capital stock of the Northern Pacific Railway Company and 200 shares of the capital stock of the Chicago, Burlington and Quincy Railroad Company and that said firm of C. L. Rathborne & Co. paid out and advanced, for and on behalf of the defendant on such transactions had with him as aforesaid, and upon his promise to repay the same with interest, at various times large amounts of money, which, together with the commissions earned for services performed upon such transactions, amounted, with interest, upon the 9th day of March, 1900, to the sum of $17,155.78, for which the plaintiff demands judgment.
The answer, after a denial of any knowledge or information sufficient to form a belief as to each and every allegation in the complaint contained, except demand and non-payment, alleges that prior to the times alleged in the complaint the said firm of C, L. Rathborne & Co. entered into an agreement with the defendant, wherein and whereby O. L. Rathborne & Co. agreed, without deposit or margin of the defendant, to deal in for defendant shares of the capital stock of companies whose shares were dealt in on the New York Stock Exchange, the same to be thereafter delivered or received by the defendant, and that thereafter the defendant authorized said firm to sell short, to be thereafter delivered for defendant, certain stock, to wit, 900 shares of the capital stock of the Northern Pacific Railway Company and 200 shares of the capital stock of the Chicago, Burlington and Quincy Railroad Company; and further alleges that the plaintiff or said firm, “ without the consent, authority or knowledge of defendant and without notice of their intention so to do, and without demand upon defendant for 900 shares of said capital stock of said Northern Pacific Railway Company and 200 shares of the capital stock of the Chicago, Burlington and Quincy Railroad Company, purchased or claimed *153 'to have purchased 900 shares of said capital stock of said Northern Pacific Railway Company and 200 shares of said capital stock of the Chicago, Burlington and Quincy Railroad Company, at a price much higher than the prices at which said alleged firm of Q. L. Rathborne & Company had sold short said 900 shares of said capita,! stock of said Northern Pacific Railway Company and 200 shares of the capital stock of said Chicago, Burlington and Quincy Railroad Company,” and thereafter notified the defendant that they delivered 900 shares of the said stock to the purchaser to whom they had sold said stock short, and such purchase and delivery were without the consent, knowledge or authority of the defendant and without previous notice 1 of their intention so to do to the defendant, and without a previous demand upon the defendant for said shares of stock. The answer further alleges as a counterclaim that by virtue of the violation of their agreement by said C. L, Rathborne & Co. the defendant sustained damage in the sum of about $16,000.
The case came on for trial at Trial Term. A jury was waived, whereupon the court found that in or about the month of November, 1898, the defendant employed the firm of C. L. Rathborne & Co. to sell for his account and risk 900 shares of the capital stock of the Northern Pacific Railway Company and 200 shares of the capital stock of the Chicago, Burlington and Quincy Railroad Company, representing at such time that he had the aforesaid shares of stock in his possession and would upon demand deliver the same to the said firm, and agreed to pay said firm for their services in that behalf the usual commissions; that “ thereafter the said firm of C. L. Rathborne & Company in pursuance of such employment sold for the account and risk of the defendant nine hundred shares of the capital stock of the Northern Pacific Railway Company and two hundred shares of the capital stock of the Chicago, Burlington and Quincy Railroad Company, and after such sale was made as aforesaid, repeatedly called upon the defendant to deliver said shares of stock and repeatedly warned him that in case of his failure to so deliver such shares that said firm would buy said stock and close out the account, and that said defendant having failed to deliver such stock in pursuance of his agreement so to do, said firm purchased said stock and paid therefor for the account of the defendant and closed out his account and notified defendant *154 thereof; ” that “ in and by the above mentioned transactions the said firm of O. L. Rathborne <fe Company advanced and paid out for and on account of the defendant herein including their commissions at the aforesaid rate, and upon defendant’s promise to pay the same, the sum of $17,084.49, of which amount they received the sum of $1,109.49,” leaving the balance due from the defendant of $15,975, for which judgment was awarded against the defendant. There was evidence to sustain these findings, and upon the facts as found it is clear that the plaintiff was entitled to judgment.
The only question presented upon this appeal is as to the rulings of the court admitting the entries in certain books of account kept by the plaintiff’s assignors as evidence against the defendant. The answér to which attention has been called admits that the plaintiff’s assignor was employed by the defendant to sell these stocks mentioned, and the plaintiff testified to repeated demands upon the defendant to deliver to him the stock that had been sold at the defendant’s request for his account, so that they could be delivered in accordance with such contract of sale, and that the defendant had refused to deliver the stock; and the only question then was as to the prices at which the plaintiff’s assignor had sold the stock and had subsequently purchased it for the account of the defendant.
The plaintiff was called and testified that he was a member of the Hew York Stock Exchange and represented his firm upon the floor of that exchange; that the defendant told the plaintiff that he had 900 shares of stock of the Northern Pacific Railway Company and 200 shares of the capital stock of the Chicago, Burlington and Quincy Railroad Company in his box, and if the plaintiff would commence selling it, if it went down he would buy it in and if it went up he would deliver the stock; that on the following day the plaintiff sold his stock according to this order; that these transactions were had on the floor of the Stock Exchange ; that the witness could not remember the exact prices at which he sold the stocks; that they were sold on the exchange at the current market rates prevailing on the-day of the sale; that he made a memorandum of the transaction and the prices and handed it to his telegraph operator; that the memorandum that he made was a correct memorandum of the actual transaction ; that he delivered that memorandum to a clerk named Elliott, whose duty it was to report the con *155 tents of the memorandum to the plaintiff’s office by telephone; that he did in fact deliver in respect to each of these transactions a memorandum of such transactions to this clerk, and that such memorandum was correct; that after he had sold this stock he had. several further interviews with the defendant at which the defendant was requested to deliver the stock, and that the plaintiff told him if he did not the plaintiff would be obliged to buy it in; that the defendant did not deliver the stock, or any of it; that subsequently the plaintiff bought the stock in at the Ñew York Stock Exchange at the current market rate on the Stock Exchange on the day that it was bought; that he did hot remember the price at which he bought it; that when he bought it he made a memorandum .of such purchase and delivered it to his clerk in the same manner as he had testified as to the memorandum which he made when he sold the stock; that the memoranda were correct memoranda of the transactions and contained the prices at which the stock was actually bought in; that a clerk of the plaintiff’s at the times of these transactions, named Kilpatrick, kept the books in .which were entered these transactions; that Elliott, who was the plaintiff’s clerk in the Stock Exchange, was the clerk during the entire period covered by these transactions, and that there were telegraphic communications upon the Stock Exchange from the plaintiff’s office; that subsequent to this transaction the plaintiff had an interview with the defendant at which the defendant said that if the plaintiff would give him two months he would pay — he acknowledged it and said he would pay the entire amount of the debt; that subsequently the plaintiff wrote a letter to the defendant stating that the two months were up and asked the defendant to give him some cash and notes for the account. This letter was written on July IT, 1900, and in reply to that the defendant wrote to the plaintiff a "letter as follows : u Your letter of yesterday at hand and while it finds me with my matters in better shape than when I saw you last, still I am not in a position to settle my account with you. I know you are put to a great deal of annoyance and inconvenience through my delay in settlement, but I am making every effort possible to fix it up.”
Elliott, the plaintiff’s telephone clerk upon the- floor of the exchange, testified that he was employed in the fall of 1898 and 1899 by the plaintiff’s assignor on the exchange end of the private *156 telephone; that the plaintiff was a member of the firm ; that the witness’ duty as clerk was to receive orders over the wire, give them to Mr. Rathborne and as he executed them he would hand the witness a written report which the witness would telephone to the office ; that he would keep the written memorandum given to him by the plaintiff and either send it to the office or bring it over at three o’clock ; that the memoranda were in the handwriting of the plaintiff ; that the witness correctly transmitted these memoranda by telephone to the office of the plaintiff in all instances; that he had no recollection of any sales or purchases of stock made for the account of the defendant; nor did the witness recollect the - prices of any of these stocks, but he correctly transmitted such as he received over the telephone to the office of the plaintiff ; that the person who answered him at the office of the plaintiff was Arthur Kilpatrick, a Mr. Young or a clerk named Graham; that in every instance when the witness called up the office either one of these three people answered the witness ; that the witness could recognize their voices over the telephone so that he could state which one was answering him ; that the entries in the book made by the clerk who received messages over the telephone were compared with the mem. oranda when the witness got to the office; that in all cases the witness telephoned first and telephoned it correctly, and afterwards he sent or took over the memoranda to the office.
Kilpatrick testified that in 1898 and 1899 he was employed by the plaintiff; that his duty in the office was to receive reports over the telephone, enter them in the purchase and sales books and when the reports were taken over during the day, or. at three o’clock, he compared the reports with the purchase and sales book so as to see that they were accurate, so as to avoid all mistakes; that he received over the telephone the reports of purchases and sales from the Stock Exchange, and that when he so received them he immediately and correctly entered them in the books ; that the books shown to the witness were in use by the firm on November 11, 1895 ; that an entry on November 18, 1898, was in the handwriting of tlie witness; that he made that entry in consequence of a receipt of a message over the telephone; that he transcribed that message in the book, and that it was a correct transcript of the message which he received; that he afterwards saw a memorandum in the handwriting of the *157 plaintiff to the same effect as that entry and he compared it with that entry and it was correct:
Plaintiff’s counsel offered this entry in evidence 'as a memorandum made by the witness of the transaction, which he knew at the time. That was objected to by the defendant, the objection overruled, to which the defendant excepted. That entry was as follows : “ Sold on November 16th, 1898, to L. E. Harker, 100 Northern Pacific, 41 1-8 R. E. F. H.”
The other sales and purchases of this controversy were proved by similar entries in the book made in the handwriting of the witness, and as to which there was similar testimony. These memoranda were subsequently destroyed; and the only question in this case is whether this evidence was competent as against the defendant.
Upon a former trial of this case these entries were admitted in evidence, and because of this admission the judgment was reversed. (80 App. Div. 117.) Upon that trial the plaintiff’s clerk (Elliott) upon the floor of the Stock Exchange was in court, but was not called as a witness, and in reversing that case Mr. Justice Laug-hlin, delivering the opinion of the court, says : “We are of opinion that the reception of these account books was error, and there being no other basis for the recovery, the judgment cannot stand. If it appeared that the broker who made- the sales was unable to recollect the terms thereof, but had examined the entries made in the books at a time when he did recollect the figures so that he knew that the entries were correct, and also that an examination, of the books would not refresh his recollection so as to enable him to testify as to the figures, or if the telephone clerk had been sworn and testified that he transmitted the information to the bookkeeper correctly as he received it from the broker, then doubtless the books would have been competent evidence in connection with the other testimony to show the essential facts.”
Upon this trial this evidence was supplied and we have now the testimony of the broker who made the transactions that he made them at the regular price ; that he immediately made a memorandum correctly stating the terms of the transaction, including the price of the stock sold and the person to whom it was sold; that he handed this memorandum to his clerk upon the floor of the *158 Stock Exchange to he transmitted to his office to he entered upon its hooks. We have the testimony of the clerk who received these memoranda, who testified that he received memoranda of sale made by the plaintiff; that in every instance he transmitted the contents of the memoranda correctly over the telephone to a clerk in the plaintiff’s office; that he subsequently compared the original memoranda with the entries in this book and that in all cases the entries were correct. We have then the evidence of the clerk in the plaintiff’s office who testified that he received the contents of the memoranda from the Stock Exchange; that he entered the purchases and sales correctly in the book according to the messages received ; that he subsequently in each case saw the memorandum made by the plaintiff and compared it with the entry in the book, and that it was correct, and the memoranda were subsequently destroyed.
We think that upon this evidence the entries were competent evidence of the transactions which they represented,, not merely as - entries in the books, but as an extension of the testimony of-the witness who made the memoranda from which these entries were made, and who testified to their correctness. If the. memoranda made at the time, stating the terms of the purchases, and sales of the stock that the plaintiff had made-upon the Stock Exchange, had been produced, with his testimony that in consequence of the lapse of time he was unable to remember the actual amount at which the stock had been sold and subsequently, purchased, there could have been no doubt but that the memoranda would have been competent evidence as a statement by the witness of the prices at which the stocks had been purchased and sold and the persons with whom the transactions were had. The books that were produced were merely copies of these memoranda. The substantial statements upon the memoranda had been simply copied into the books, and the evidence was sufficient to justify a finding that the entries were correct copies of the memoranda made by the plaintiff at the time of the transaction.
While it is a general rule that declarations or statements of a party áre'not admissible, as evidence on his own behalf, there are exceptions, made necessary by the situation, and one exception that is generally recognized is that where a party at the. time- of the *159 transaction, in the ordinary course of his business, makes an entry or memorandum of a fact and he is able to testify that he made that entry at the time and that it was a correct statement of that fact, but that in consequence of the lapse of time he is unable to testify from independént recollection of details shown by such an entry, the entry itself is admissible as an extension of the witness’ testimony, its correctness having been proved. These entries in the books of original entry, made directly from the memoranda made by the plaintiff, are copies of the memoranda, and are admissible as secondary evidence, the memoranda themselves having been destroyed.
The admissibility of entries of this kind was discussed in the case of Mayor, etc., of N. Y. v. Second Ave. R. R. Co. (102 N. Y. 572). Upon determining that evidence of this character was competent, Judge Andrews said: “ But combining the testimony of Wilt and the gang foremen, there was, first, original evidence that laborers were employed, and that their time was correctly reported hy persons who had personal knowledge of the facts, and that their reports were made in the ordinary course of business, and in accordance with the duty of the persons making them, and in point of time - were contemporaneous with the transactions, to which the reports related, and second, evidence by the person who received the reports, that he correctly entered them as reported, in the time-book, in the usual course of his business and duty. It is objected that this evidence taken together, is incompetent to prove the ultimate fact, and amounts to nothing more than hearsay. If the witnesses are believed, there can be but little moral doubt that the book is a true record of the actual fact. * * * The question arises, must a material, ultimate fact be proved by the evidence of a witness who knew the fact and can recall it, or who, having on personal recollection o'f the fact at the time of his examination as a witness, testifies that he made, or saw made, an entry of the fact at the time, or recently thereafter, which on being produced, he can verify as the entry he made or saw, and that he knew the entry to be true when made, or may such ultimate fact be proved by showing by a witness that he knew the facts in relation to the matter which is the subject-of investigation, and communicated them to another at the time, but had forgotten them, and supplementing this testimony by that *160 of the person receiving the communication to the effect that he entered at the time, the facts communicated and hy the production of the book or memorandum in which the entries were made. The admissibility of memoranda of the first class is well settled. They are admitted in connection with, and as auxiliary to the oral evidence of the witness, and this whether the witness, on seeing the entries, recalls the facts, or can only verify the entries as a true record made or'seen by him at, or soon after the transaction to which it relates.” The opinion then proceeds: “We are of opinion that the rule as to the admissibility of memoranda may properly be extended so as to embrace the case before us. * * * We think entries so made, with the evidence of the foremen that they made true reports, and of the person who made the entries that he correctly entered them, are admissible.”
This would seem to be a direct authority for the admission of this evidence, and with this evidence in the record there can be no doubt but' that the plaintiff sold and purchased the stock upon the day named and at the price named for account of this defendant. To allow the defendant to escape responsibility for an indebtedness which he has in fact conceded, and promised again and again to pay, simply because from, the lapse of time and the inability of the plaintiff to remember the exact price at which he sold and 'purchased these shares of stock, when the facts are proved to the satisfaction of any one, would be a denial of justice. Other questions that appear on the record do not require notice.
It follows that the judgment appealed from must be affirmed, with costs.
Van Brunt, P. J., O’Brien, McLaughlin and Hatch, JJ.. concurred.
Judgment affirmed, with costs.