seems to me that the admission of this evidence was error, and therefore I cannot concur in the judgment of the majority of the court.

HATCH, J., concurs.

(58 App. Div. 66.)

BLOOMINGTON MIN. CO. v. BROOKLYN HYGIENIC ICE CO.

(Supreme Court, Appellate Division, First Department.   February 8, 1901.)

1. EVIDENCE—ENTRIES AND MEMORANDA.

A stevedore testified that he gave to his bookkeeper correct information, on a slip of paper received from the consignee's bookkeeper, as to the number of tons of coal delivered, from which witness' bookkeeper made the entries in the firm books. The consignee's bookkeeper testified that he kept a coal book, in which it was his duty to enter the number of tons received; that the book contained an accurate account of the amount delivered; that he had no recollection, aside from this book (which the consignee failed, on notice, to produce), as to the amount of coal delivered at that time, but it was his custom to give the stevedore the amount delivered; that it was his duty to know how many tons were delivered; and that the memoranda given by him were correct. *Held*, that such testimony was competent to prove delivery of the coal.

2. SAME.

It was competent for the stevedore's bookkeeper, in connection with her testimony, to read the entry she had made in the book kept by her.

3. ACCORD AND SATISFACTION.

The rule of accord and satisfaction does not apply to a settlement embracing payment for property sold and delivered, as regards property concerning the delivery of which both parties were ignorant, though a receipt be given in full.

Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by the Bloomington Mining Company against the Brooklyn Hygienic Ice Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

L. Laflin Kellogg, for appellant.

Franklin D. Peale, for respondent.

McLAUGHLIN, J. This action was brought to recover the purchase price of a cargo of coal alleged to have been sold and delivered by the plaintiff to the defendant on or about the 13th of August, 1895. The answer denied the sale and delivery, and, as separate defenses, alleged (1) payment, (2) settlement in full, and (3) accord and satisfaction. The plaintiff between June 8 and November 30, 1895, sold through its agent, one Apollonio, and delivered to the defendant at its place of business, several boat loads of coal. On the 30th of September, 1895, the plaintiff rendered to the defendant a bill for coal delivered to that date, which was settled by a note of the defendant. Between the 30th of September, 1895, and the 30th of March, 1896, the plaintiff also sold and delivered to the

defendant, at its place of business, several other boat loads of coal, for which the defendant on the latter date settled with the plaintiff, paying the bill partly in cash and partly by note, and took from the plaintiff the following receipt:

"$2,302.                                           March 30, 1896.

"Received from John H. O'Rourke note for two months, dated March 31, 1896, $2,302, in full settlement of all demands of every kind and nature.

"Bloomington Mining Company,
"By S. F. Apollonio."

O'Rourke, it was conceded, was the president and treasurer of the defendant, and acted for it in the transaction.

Some time after the settlement in March the plaintiff claimed that it had delivered to the defendant a cargo of coal on the 13th of August, 1895, which was not included in either of the settlements. The defendant denied that it had either purchased or received such coal, and refused to pay for the same, and thereupon this action was brought. The plaintiff had a verdict for the amount claimed in the complaint, and from the judgment entered thereon defendant has appealed.

From the testimony introduced upon the trial it appeared that some time prior to August, 1895, the plaintiff put upon the boat Eureka 291 tons of coal. This was not disputed, but the sole issue contested was whether or not the coal loaded upon this boat was in fact delivered to the defendant. To establish the delivery the plaintiff called five witnesses: The captain of the boat Eureka, who testified, in substance, that she was loaded with coal, and thereafter taken to the foot of Degraw street, Brooklyn, where it was unloaded and carted away "about half a block up the dock this side of the ice company"; that he had a bill of lading of the coal, which he took to and left at the defendant's office until the coal had been unloaded from the boat, when he went to the office and got it, and thereafter lost it. The wife of the captain testified that in August, 1895, she was living on the boat Eureka, and that in the middle of the month the boat was loaded with coal and towed to the defendant's premises, where the coal was unloaded; that there were 291 tons of it, and that "they shoveled it into the Hygienic Ice Company's place"; and that she saw the bill of lading. The dock master of the city of Brooklyn testified that the boat Eureka lay at the foot of Degraw street, Brooklyn, from the 13th to the 17th of August, 1895, and that he collected wharfage for such boat from the defendant. One of the stevedores (Daniel Dresmond) testified that he was a member of the firm of Dresmond Bros., and that in August, 1895, his firm carried coal from the docks in Degraw street to the bins of the defendant; that at that time his sister, Mary Dresmond, was the bookkeeper of his firm, and that he gave to her the data from which she, as such bookkeeper, made the entries in a book kept by her of the work done by his firm for the defendant. And after examining that book he testified that on August 17, 1895, his firm transported coal from the dock at the foot of Degraw street to the defendant's bins, but that he was unable from his personal recollection to state

how many tons; that at the time the coal was transported he correctly stated to the bookkeeper of his firm the number of tons as given to him by one John Conlin, who was the bookkeeper of the defendant, and whose custom it was to keep track of the number of tons of coal transported by the firm of Dresmond Bros. for the defendant. He also testified that after this work was done a bill was rendered to the defendant for this and other work, amounting to $292, which was paid. Mary Dresmond, the bookkeeper of the firm of Dresmond Bros., testified that in August, 1895, she kept a record of transactions between Dresmond Bros. and the defendant, by making entries thereof in a certain book; that all she knew about the entries in this book concerning such transactions was derived from information given to her by Daniel Dresmond; that she correctly entered in the book what he told her; that on referring to the book she found an entry under date of August 17, 1895, charging John H. O'Rourke, the president and treasurer of the defendant, "with hoisting, carting, and trimming 291 tons of coal, at 25 cents, $72.75"; that thereafter she made out a bill against the defendant, amounting to $292, which included this charge, and subsequently a check was received from the defendant in payment of the same.

That the testimony of these witnesses required the submission to the jury of the question of whether or not the coal had been delivered cannot be seriously disputed, and we do not understand that the counsel for the appellant contends to the contrary. What he does contend, however, is that the trial court erred in admitting the testimony of Mary Dresmond as to the entry in the book kept by her, and in permitting her to read such entry, as well as in admitting the testimony of Daniel Dresmond. He objected to this testimony at the time it was offered, upon various grounds, and after it had been received he moved to strike out the same. The objections were overruled, and the motion to strike out denied, and exceptions taken to such rulings, which present, as it seems to us, the only serious question in the case. We are, however, of the opinion that the ruling of the trial court was right. In determining that question it must be borne in mind that the purpose of the testimony of Mary Dresmond and Daniel Dresmond was to establish the delivery of the coal, and nothing else. The fact that the plaintiff put upon the boat Eureka 291 tons of coal was not disputed; nor was the price to be paid for such coal disputed, if delivery were in fact made. Keeping this in mind, a brief reference to the testimony of these witnesses, taken in connection with the testimony of the bookkeeper of the defendant, will show the correctness of the ruling, within the authorities hereafter cited. Daniel Dresmond testified that he gave to the bookkeeper correct information, from which she made the entries in the book referred to; that such information was given to her on a slip of paper, which, to use his own language, "I got it from Mr. O'Rourke's bookkeeper. The name of the bookkeeper is John Conlin. He is in court. * * * 291 tons were stated by Mr. Conlin to have been delivered." Conlin testified that

in August, 1895, he was in the employ of the defendant, and kept what was known as the "Coal Book," in which it was his duty to enter the number of tons of coal received by the defendant at its place of business near the foot of Degraw street, Brooklyn; that this book contained an accurate account of the number of tons delivered; that he had no recollection, independent of this book, which he had not seen for three years, and which the defendant, notwithstanding a notice to produce, failed and neglected to produce at the trial, as to the number of tons of coal delivered during the month of August, 1895, but that it was his custom during that time to give a memorandum to Mr. Dresmond of the number of tons delivered by his firm to the defendant; that it was his duty to know how many tons were delivered; and that the memoranda which he gave were correct. He also testified that, when bills were presented by Dresmond Bros. for charges made by such firm for transporting coal from the foot of Degraw street to the bins of defendant, it was his custom to take them "under advisement before they were paid, to check them up." The testimony of these two witnesses, taken in connection with the other testimony in the case, was competent; and it was also competent for Mary Dresmond, in connection with her testimony, to read the entry which she made in the book kept by her. Mayor, etc., v. Second Ave. R. Co., 102 N. Y. 579, 7 N. E. 905; Cobb v. Wells, 124 N. Y. 77, 26 N. E. 284; West v. Van Tuyl, 119 N. Y. 620, 23 N. E. 450; McGoldrick v. Traphagen, 88 N. Y. 334; Clark v. Bank, 32 App. Div. 316, 52 N. Y. Supp. 1064; Curtis v. Bradley, 65 Conn. 99, 31 Atl. 591, 28 L. R. A. 143; Lapham v. Kelly, 35 Vt. 195; Kelsea v. Fletcher, 48 N. H. 282.

The admissibility of this testimony seems to come directly within the rule laid down in Mayor, etc., v. Second Ave. R. Co., supra. There the plaintiff called as a witness a foreman who had general charge of certain work, under whom were two "gang foremen," each having charge of a separate gang of laborers. The foreman kept a time book, in which was entered the name of each laborer employed. He visited the work twice a day, and testified that while there he entered on the time book the time of each man, as to which he had no personal knowledge except as the same was reported to him by the gang foremen, who did not see the entries which he made. The gang foremen testified that they correctly reported to the foreman the names of the men and the time each worked. Upon this proof the court held that the time book was properly admitted in evidence; Judge Andrews, who delivered the opinion of the court, saying:

"We are of the opinion that the rule as to the admissibility of memoranda may be properly extended so as to embrace the case before us. The case is an account kept in the ordinary course of business, of laborers employed in the prosecution of work, based upon daily reports of foremen who had charge of the men, and who, in accordance with their duty, reported the time to another subordinate of the same common master, but of a higher grade, who, in turn, also in accordance with his duty, entered the time as reported. We think entries so made, with the evidence of the foremen that they made true reports, and of the person who made the entries that he correctly entered them, are admissible."

This brings us to the consideration of the affirmative defenses pleaded, which can be disposed of without difficulty. As to the defense of payment, it is only necessary to say that there is no claim made that the coal in question had been paid for; nor is there anything in the record from which even an inference can be drawn that there was a settlement between the parties in reference to it. As to the defense of accord and satisfaction, there is no merit in it. Both parties at the time of the settlements in September, 1895, and in March, 1896, were ignorant of the fact that the boat load of coal in question had in fact been delivered to the defendant. Under such circumstances the rule of accord and satisfaction does not apply. That rule only applies where a demand is unliquidated and one party claims more than the other concedes to be due, and, as an adjustment and settlement of the dispute between them, an arbitrary amount is fixed upon and paid. Nassoiy v. Tomlinson, 148 N. Y. 329, 42 N. E. 715; Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785. Here the liability of the defendant to pay for the coal in question, if it were delivered, is not disputed; and, where a liability to pay a certain amount is not disputed, the acceptance of a less sum than is due will not discharge the debt, when the acceptance of such sum arises from a mutual mistake, and this is so even if a receipt in full be given. The element of a consideration is lacking, and the obligation of the debtor to pay the entire debt is not satisfied. Fuller v. Kemp, supra. "To constitute an accord and satisfaction," says the court of appeals in Fuller v. Kemp, quoting from Preston v. Grant, 34 Vt. 201, "it is necessary that the money should be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as to amount to a condition that if the money is accepted it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that if he takes it he takes it subject to such condition. When a tender or offer is thus made, the party to whom it is made has no alternative but to refuse it or accept it upon such a condition." Applying this rule, it at once becomes apparent that notwithstanding the settlement in September and the settlement in March, and the receipt then given, the defendant was not discharged from its obligation to pay for the coal in question.

We have examined the other questions raised by the appellant, but it is unnecessary to refer to them, further than to say that, after such examination, we do not think any error was committed calling for a reversal of the judgment.

The judgment and order must be affirmed, with costs. All concur, except VAN BRUNT, P. J., who dissents.

VAN BRUNT, P. J. I dissent upon the ground that the entries in Dresmond's books were not competent evidence, and their admission was error.