---

## SCHULLER v. ROBINSON et al.

(Supreme Court, Appellate Division, First Department.　June 24, 1910.)

1. ACTION (§ 60*)—JOINDER—SEVERANCE—DISMISSAL AS TO ONE.

Where a cause of action is severable and the parties may be severally liable, the dismissal of the complaint as to one of the defendants may be regarded as a severance.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 699, 701; Dec. Dig. § 60.*]

2. COSTS (§ 48*)—JOINT DEFENDANTS—DISMISSAL AS TO ONE.

Code Civ. Proc. § 3229, declares that the defendant is entitled to costs of course on the rendition of a final judgment in an action specified in the preceding section, unless plaintiff is entitled to costs, but that where, in such an action against two or more defendants, plaintiff is entitled to costs against one or more, but not against all, none of the defendants are entitled to costs of course, but costs may be awarded in the discretion of the court to any defendant against whom plaintiff is not entitled to costs, where it did not unite in answer and was not united in interest with the defendant against whom plaintiff is entitled to costs. *Held* that, where two defendants answer jointly in an action at law, the right of one of them as to whom the action is dismissed to recover costs must depend on whether plaintiff succeeds in the action.

[Ed. Note.—For other cases, see Costs, Cent. Dig. § 208; Dec. Dig. § 48.*]

3. ACCORD AND SATISFACTION (§ 11*)—CONCEDED INDEBTEDNESS—CONSIDERATION.

A debtor's payment of part of a conceded indebtedness, on condition that the acceptance of part should discharge the liability, does not constitute an accord and satisfaction for want of a consideration.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 75-83; Dec. Dig. § 11.*]

4. ACCORD AND SATISFACTION (§ 27*)—INTENT OF PARTIES—QUESTION FOR JURY.

In an action to recover the balance of an account, whether there was an accord and satisfaction as to part of the goods sold *held* for the jury.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 59, 83, 97, 110, 135, 150; Dec. Dig. § 27.*]

5. SALES (§ 36*)—CONTRACT—MISTAKE.

Where a buyer of imported artificial silk sent a cipher cablegram calling for reduction of 2 marks per kilo as a condition to shipments, and by reason of mistransmission the code words as to such reduction were unintelligible, but the seller notified the buyer that it would make shipments, pursuant to which the buyer sold 2,000 kilos on the basis of the reduced price before the mistake was discovered, the seller was only entitled to recover for the amount so sold at the reduced price, but the buyer was not entitled to that price as to the balance sold after dis-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

covery of the error and the seller's refusal to furnish the goods at the reduction.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 63, 64; Dec. Dig. § 36.*]

Action by Otto T. Schuller against Louis Robinson and another. Motion for new trial on plaintiff's exceptions ordered to be heard in the Appellate Division in the first instance. Sustained, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, and LAUGHLIN, JJ.

Herbert R. Limburg (Morris J. Hirsch, on the brief), for plaintiff. Eugene Cohn, for defendants.

LAUGHLIN, J. At the close of the plaintiff's case on motion of counsel for the defendants, the court dismissed the complaint as against the defendant Seine Robinson. The plaintiff does not seek to review that dismissal on this appeal; but he contends that, if the judgment be reversed and a new trial be granted as against the other defendant, the judgment for costs in favor of the defendant Seine Robinson should also be reversed. It appears that the action is brought on a liability of the copartnership firm of G. Robinson & Son. It is alleged in the complaint that G. Robinson died, and that the defendant Seine Robinson is now a member of the firm. There is no allegation or proof that she was a member of the firm at the time the liability arose, or that she assumed the obligations of the firm, but it appears that she answered jointly with the other defendant, and therefore by the express provisions of section 3229 of the Code of Civil Procedure, if the plaintiff recovered in the action, she would not have been entitled to costs. If the dismissal of the complaint as against her ipso facto constituted a severance of the action, or the true construction of said section 3229 be that it has reference to the rights of the parties as they appear at the time judgment is originally entered, then doubtless the judgment may be permitted to stand in her favor unaffected by subsequent proceedings. We have held that where the cause of action is severable and the parties might be severally liable and the complaint is dismissed as to one defendant, and there is a disagreement as to the others, the one in whose favor the complaint was dismissed may enter judgment on the theory that the motion of the court constitutes a severance of the action. Tanzer v. Breen, 131 App. Div. 654, 116 N. Y. Supp. 110. See, also, C. C. P. §§ 456–1204–1205, also Draper v. Interborough Rapid T. Co., 124 App. Div. 357, 108 N. Y. Supp. 691. Since, however, the parties answered jointly and the general rule is that only one judgment may be entered in an action at law, it would seem that the right of the respondent Seine Robinson to costs must ultimately depend on whether plaintiff succeeds in the action; but, of course, the dismissal as to her stands.

The action is on an assigned claim of the Kunst-Seide-Verkaufskontor, a limited liability corporation of Cologne, Germany, on a liability of the copartnership firm of G. Robinson & Son of New York City,

and it is now an action against Louis Robinson alone on said liability, and for brevity he will be referred to as the defendant, although as has been seen there are two defendants. At the close of the evidence the learned justice directed a verdict in favor of the defendant and an exception was duly taken. On uncontroverted facts, in the main formally stipulated, questions arise with respect to whether the plaintiff is debarred from maintaining the action on the ground that there was an accord and satisfaction between the parties, and, if not, then with respect to the extent of the liability of the defendant.

Prior to the 28th day of June, 1906, a verbal contract was made between the plaintiff's assignor and defendants at the city of Cologne, by which the former agreed to sell, and the latter agreed to purchase, 5,000 kilos of artificial silk at the price of 15 marks per kilo, "to be delivered in part shipments as requested by the purchaser prior to the end of the year 1906," and it was further agreed that, should the plaintiff's assignor "reduce the price for artificial silk for America under similar conditions, such reduced price should be applied to the uncalled for balance of the order." The sales agent of the plaintiff's assignor also undertook to procure for said firm 1,500 kilos of meteor, which is artificial horsehair. There had been prior dealings between the parties. It is stated in the stipulated facts that on the 28th day of July, 1906— I presume the 28th day of June was intended—the plaintiff's assignor inclosed to defendants by mail two sales memoranda with respect to the artificial silk and the meteor, in accordance with the parol agreement. These memoranda of sales and the stationery used by the plaintiff's assignor in its correspondence with said firm contained a memorandum in German which in English is as follows:

"Cable address, Kunstseide. Lieber's Code. A B C Code, Fifth Edition."

All cablegrams between the parties were in the cipher of the A B C Code, Fifth Edition. On the 13th day of July, 1906, the defendants cabled plaintiff's assignor as follows:

"Majorquin can use ponsia each tubize blue label piamater deepsome recondes."

This cablegram, when given the meaning of the code words, was as follows:

"The market appears to have collapsed. Can use 10 cases each tubize blue label. 13 marks. Immediate delivery. Reply immediately by A B C Code, 5th Edition."

The word "piamater" meant, according to said code, 13 marks. On the day the cablegram was sent defendants wrote plaintiff's assignor that the market appeared to have collapsed, and that they could "use 10 cases each tubize and blue label at M. 13. Immediate delivery. Reply immediately A B C Code, 5th Edition," and expressed the hope that the offer would be accepted, inasmuch as the goods were being sold here for $2 per pound and had been offered lower, and that the cutting of prices was done by some of plaintiff's assignor's old customers. This letter was not delivered in Cologne until the 24th day of July, 1906. The cablegram was delivered to plaintiff's assignor the next day after it was sent, and in it as delivered the word "pramater" was

used instead of "piamater," and that word was not in said code and was meaningless, but plaintiff's assignor made no effort to ascertain what the mistake was. On the 9th day of July the defendants wrote plaintiff's assignor, inclosing a draft in payment for certain bills not under this contract, and requested a shipment at once of "500 Kilo Tubize roh 150 Denier," and which evidently was to be under this contract therein stated that the goods of the plaintiff's assignor, both in artificial silk and meteor, were "being sold by our competitors at and below cost, figuring artificial silk at M. 15 and meteor at M. 20 per kilo, which as you know, is what the goods cost us. We will write more about this in our next letter." It does not appear when this letter was delivered, but it is stipulated that the usual period of transmission by ordinary course of mail was from 8 to 12 days. On the 16th day of July, the defendant cabled to plaintiff's assignor, "Please wire reply to our telegram of last Friday. Cannot take orders unless you accept"; and the message was delivered the next day. On the day this cablegram was received plaintiff's assignor cabled defendants as follows:

"10 cases blue label, 5 cases tubize to-day, 5 cases by steamer next week."

On the 18th day of July plaintiff's assignor wrote defendants with respect to the cablegram and this shipment, but did not refer to the meaningless word in the cablegram. After receiving the cablegram of July 17th, and before the 25th of the same month, the defendants, relying thereon and expecting to receive, not only the 20 cases ordered by cable, but further consignments at 13 marks instead of 15 marks per kilo, contracted to sell 3,800 kilos of artificial silk. On July 25th the defendants cabled plaintiff's assignor as follows:

"How and when were the goods shipped? Telegraph name of steamer. Repeat last order. You may ship by first steamer. Failing that by following."

The next day plaintiff's assignor cabled defendants, referring to the cablegram containing the meaningless word, as follows:

"Cannot clearly understand eighth word in your cablegram. If important, please repeat it. Lowest price is M. 15. Telegraph what we are to do."

The same day the defendants received another cablegram from plaintiff's assignor as follows:

"Waiting reply to our cablegram."

After the receipt of these cablegrams, defendants cabled as follows:

"Our letter of July 13th explains everything. Yesterday's order to be executed as speedily as possible. We can arrange everything with Schuller"

—meaning plaintiff, who represented plaintiff's assignor in the United States. The next day the defendants received an answer by cable as follows:

"Cannot execute orders because we cannot accept offer. Lowest possible price is fifteen. Must have definite answer."

Thereupon defendants cabled as follows:

"Your telegram to hand. Ship new order by cheap steamer."

After receiving this cablegram, plaintiff's assignor immediately shipped 15 cases of goods, and notified defendants that they had been shipped under the contract. On the 30th of July defendants cabled plaintiff's assignor to ship 25 cases more, and on the 30th of July wrote plaintiff's assignor with respect to these orders, but made no complaint concerning the refusal of plaintiff's assignor to ship at the reduced price previously requested.

The shipments and invoices by the plaintiff's assignor to the defendant after the making of the contract were as follows: On the 16th day of July plaintiff's assignor shipped 1,000 kilos of artificial silk to defendant, and transmitted an invoice showing that it was billed at 15 marks per kilo, and that the total charge therefor, less 3 per cent. discount for cash within a month as provided in the contract, was 14,-560.60 marks; on the 19th day of July 504 kilos invoiced in like manner at 7,343.80 marks; on the 26th, 504 kilos invoiced at 7,343.80 marks; on August 2d, first shipment that day, 504 kilos invoiced at 7,-343.80 marks, second shipment 999.30 kilos invoiced at 15,034.74 marks, and on August 17th, 1507.50 kilos invoiced at 21,944.75 marks. We do not deem it important to determine under which particular orders these respective shipments were made; for, while the plaintiff claims that in any event he is entitled to recover for 500 kilos ordered by letter on July 9th at the rate of 15 marks per kilo for the reason that that order was manifestly under the contract, the deduction claimed by the defendant is on account of 3,800 kilos which he claims to have sold in reliance upon the cablegram of the plaintiff's assignor, which, in view of his cablegrams to which it was an answer, he understood to be a consent to sell to him the artificial silk at 13 marks per kilo, instead of 15. All of these invoices have been paid with the exception that the defendant in remitting has deducted two marks per kilo on 3,800 kilos and 30 per cent. of this deduction for duty on the theory that, if they had been billed at 13 marks instead of at 15 marks, the customhouse officers would have accepted that valuation, and the duty on the 2 marks per kilo would have been saved, and also a discount of 3 per cent., being the cash discount provided for in the contract. On the 7th day of September the defendant remitted to plaintiff's assignor a draft for 10,000 marks on account. There was then owing by defendant to plaintiff's assignor, in addition to his liability for artificial silk, 15,725.05 marks for meteor shipped on the 18th day of June the same year. On October 15th the defendant made a like remittance of 10,000 marks on account. On November 2d the defendant inclosed to plaintiff's assignor a draft for 7,244.95 marks, and inclosed with it a statement of account in which he charged himself with 15,725.05 marks for the meteor shipped on June 18th, and 14,560.60 marks being for the invoice of artificial silk July 16th, making a total of 30,285.65 marks, and he credited himself with 3,040.70 marks, therein stated to consist of 488.70 marks for an alleged overcharge of 1 mark per kilo on the meteor and discount thereon, 30 marks for an alleged extra charge on short shipment, 1,940 marks being 2 marks per kilo on said invoice less the discount, and 582 marks being for the duty alleged to have been overpaid at the rate of 30 per cent. on 1,940

marks of the valuation. Said statement showed this amount 3,040.70 marks deducted from the 30,285.65 marks leaving a balance of 27,-244.95, from which was deducted the 20,000 marks previously paid on account, showing a balance of 7,244.95 marks for which the draft was sent. On November 14th plaintiff's assignor acknowledged this remittance, and stated that it gave defendant credit for the draft, but that it disallowed the credits claimed by him and demanded payment of the balance owing, and it is stipulated that it inclosed therewith a copy of the account as stated by it, which, however, does not appear in the record. On the same day the defendant remitted to plaintiff's assignor a draft for 6,085.70 marks, and inclosed a statement showing that it was for the invoice of July 19th, related to nothing else, and was for the amount thereof less an alleged overcharge on account of the 2 marks per kilo and the discount and duties thereon. On the 24th of the same month plaintiff's assignor acknowledged the remittance, and stated that the same had been credited to the defendant, but that defendant was still held for the unwarranted deduction. On November 23d defendant likewise sent a draft for 6,059.70 marks and inclosed a statement of account showing that it was for the invoice of July 26th less like deductions. This was acknowledged in like manner on December 3d. On November 30th defendant sent another draft for 6,072.70 marks being for the first invoice of August 2d less like deductions, with a statement showing them. This was acknowledged in like manner on December 12th. On December 7th defendant sent a draft for 5,000 marks to be applied on account without any statement of the account, and on the 14th, the 21st, and the 28th of the same month a draft for the same amount, which remittances were promptly acknowledged as they were respectively received. On the 9th day of January, 1907, the defendant inclosed to plaintiff's assignor a draft for 5,799 marks, and inclosed therewith a statement showing a balance of account for 8,000 marks for which he said he would remit the next week. This statement of account showed that the remittance was on account of the second invoice of August 2d, and the invoice of August 17th, and another of July 25th for 68.20 marks, which has been paid and is not involved in this action, less an item given as "deductions 3,248.70" in a column relating to marks. There was also inclosed another statement which showed that this deduction was likewise on account of the 2 marks per kilo and the discount and duties on 1,288 kilos only, and not on the entire invoices concerning which the remittance was made, and showed that it was arrived at on the theory that the defendant was entitled to receive 3,800 kilos at 13 marks per kilo, and had already deducted from prior invoices on 2,512 kilos on that theory, leaving a balance of 1,288 kilos.

On the 21st of January plaintiff's assignor wrote defendant, acknowledging the receipt of the draft for 5,799 marks, and in its letter stated, "We regret that we cannot accede to your deduction of M. 3,248.70 and refer with respect to this to ours of December 12th, 1906," in which it had asserted the correctness of its claim as already stated. On the 23d of January the defendant inclosed a draft to plaintiff's assignor for 8,000 marks, and with it a letter as follows:

"We inclose draft for M. 8,000 in full settlement to August 17th inclusive. Please acknowledge receipt and oblige."

No statement of account appears to have been inclosed with this remittance, but it is manifest that it had reference to the 8,000 marks shown as a balance on the account inclosed with the remittance of January 9th, and which defendant had promised to send the next week. The draft itself contained no condition, and it does not appear when it was used by plaintiff's assignor. It is important to note that this letter inclosing the draft in "full settlement to August 17th, inclusive," is somewhat indefinite with respect to what it was intended to be in full settlement of, and it did not pointedly inform plaintiff's assignor that it was only at liberty to accept and use the draft on condition that it waive all claims or any particular claim it had against the defendant. It is further important to note that the parties concededly had had considerable correspondence concerning this and two other claims to which reference will be made presently, and that at no time did the defendant assert a right or take a decided stand to the effect that he was entitled to these deductions and that he would not yield, otherwise than by making these countercharges, and it appears that for four months after this time there were negotiations between the parties personally or through their agents and by correspondence with respect to the balance claimed by plaintiff's assignor to be due, and at no time until the service of an amended answer herein did the defendant claim that there had been an accord and satisfaction by this remittance and letter; but, on the contrary, he consented to confer with plaintiff's assignor and to call at its place of business in Cologne with a view to negotiating a settlement of the controversy, which appointment, however, he appears to have been unable to keep, and, when the plaintiff's assignor again wrote him with reference to its claim, he failed to answer the letter, and thereupon this action was brought.

It is to be noted, also, that the letter inclosing the draft, the use of which by plaintiff's assignor is now claimed to have been an accord and satisfaction, requested an acknowledgment of its receipt. It appears that plaintiff's assignor pursuant to this request for an acknowledgment of the receipt promptly on receiving the draft wrote the defendant on February 4th, acknowledging the receipt of the draft, and in its letter, referring to the receipt of the draft, said, "which we have credited to your account." There is some room for argument under the decisions of the Court of Appeals in Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695, and Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785, that the acceptance and use of the draft constituted an accord and satisfaction with respect to the claim of plaintiff's assignor to recover 2 marks per kilo on the 1,288 kilos of the invoices in payment for which that remittance was made, but upon no theory can it be even plausibly contended that it constituted an accord and satisfaction with respect to the plaintiff's claim concerning the remaining 2,512 kilos, and we are of opinion that it did not constitute an accord and satisfaction at all, at least not as matter of law, and that, at most, a question concerning the claim with reference to the 1,288 kilos was presented as to the intention and under-

standing of the parties which was one for the jury to determine. In so far as an accord and satisfaction with respect to the claim of the plaintiff's assignor concerning the 2,512 kilos is deemed to be predicated upon the acceptance and use of the draft, it is precisely the same as an attempt by a debtor to pay a part of a conceded indebtedness and impose a condition that the acceptance of part should discharge the liability in full. The rule has not yet been carried to that extent in this jurisdiction, and it has been held that in such case there is no consideration for the alleged accord and satisfaction to rest upon. Bolen v. Crosby, 49 N. Y. 183; Bloomington Mining Co. v. Brooklyn Hygienic Ice Co., 58 App. Div. 66, 68 N. Y. Supp. 699, affirmed, 171 N. Y. 673, 64 N. E. 1118; Kelley v. Lawrence, 78 App. Div. 484, 79 N. Y. Supp. 914; Shanley v. Koehler, 80 App. Div. 566, 80 N. Y. Supp. 679; affirmed 178 N. Y. 566, 70 N. E. 1109. I am of opinion, also, that as matter of law the alleged claim that this constituted an accord and satisfaction is limited to the claim of the plaintiff's assignor concerning the 1,288 kilos of the invoices contained in the statement of the account on which the balance of the 8,000 marks was struck, and for which the remittance was subsequently made. At this time two other claims were in controversy between the parties. The plaintiff's assignor had a claim against the defendant for 1,886.19 marks for duties paid on an invoice of meteor shipped on the 2d day of January, 1906, on which the defendant had remitted in full, except for the duties, on the 26th of March, 1906, before this contract was made. The plaintiff's assignor also had a claim against the defendant for 1 mark per kilo on the meteor shipped on the 18th day of June, the same having been invoiced at 20 marks per kilo, and the defendant having remitted only 19 marks per kilo, on the theory that the price to dealers in America had been reduced, and that he was therefore entitled to the deduction. It was never contended by the defendant that there was ever any accord and satisfaction with reference to these two claims, and the defendant's position appears to have been wholly untenable with reference thereto, and this he conceded pending the trial of this action and paid the claim of the plaintiff's assignor therefor shortly before the trial. The correspondence between the parties also shows that the defendant was at all times very much behind in his payments, and indicates that he attempted to justify this to the agent of the plaintiff's assignor, although not in his correspondence, on the theory that he was entitled to the artificial silk at 13 marks per kilo. It appears that the plaintiff's assignor repeatedly urged him to pay more promptly at least what he conceded to be owing, and that then from time to time he made remittances as herein stated.

In view of these facts and the way the matter was regarded by both parties after the alleged accord and satisfaction, it cannot be maintained that as matter of law there was any accord and satisfaction, and I am inclined to the opinion that it should be declared as matter of law that there was none; but it is possible that with respect to the claim concerning the 1,288 kilos there may be a question for the jury as to whether the minds of the parties met on an agreement that the acceptance and use of the draft should constitute a settlement of that

claim. The failure of the respondent to reply to the letter of the plaintiff's assignor, invited by him, by which he was informed that the draft had not been received in full settlement of anything but had been applied on account, should be deemed an acquiescence on his part in the course pursued, for, had the plaintiff's assignor known that he intended the acceptance and use of the draft to be conditioned upon a waiver and relinquishment of all or any of the claims, it may well be that it would have retransmitted the draft or returned the proceeds. These facts distinguish the case from the Nassoiy and Fuller Cases, supra, upon which the defendant relies, and I think bring the case fairly within the doctrine of Eames Vacuum Brake Co. v. Prosser, 157 N. Y. 289, 51 N. E. 986, and Laroe v. Sugar Loaf Dairy Co., 180 N. Y. 367, 73 N. E. 61, which distinguish and limit the former cases, and Komp v. Raymond, 175 N. Y. 102, 67 N. E. 113, and Windmuller v. Goodyear Tire & Rubber Co., 123 App. Div. 424, 107 N. Y. Supp. 1095, and Strock v. Brigantine Trunk Co., 23 Misc. Rep. 358, 51 N. Y. Supp. 327.

Another question arises with respect to the right of the plaintiff to recover for the 2,000 kilos ordered by the cablegram in the transmission of which a mistake was made, and with respect to the defendant's claim that he was justified not only in selling 2,000 kilos of artificial silk on the expectation that he would receive it at 13 marks per kilo, but that he was entitled to the reduction on the 3,800 kilos which he had sold before he learned that the plaintiff's assignor would not ship at 13 marks per kilo. We are of opinion that as matter of law the plaintiff can only recover on the basis of 13 marks per kilo for the 2,000 kilos, for his assignor should have discovered the full meaning of the cablegram before notifying the defendant that it would make the shipments. It should have been put upon its guard by the reference in the cablegram to the fact that the market was falling. The fact that the defendant had contracted to take 5,000 kilos of the artificial silk at 15 marks per kilo during the remainder of the year does not affect the question. The defendant was not obliged to order any goods at that particular time, and, when he made sales relying upon its cablegram in answer to his, he had a right to assume that it received the cablegram in an intelligible form, or that it would have asked to have it repeated or have communicated with him. He was therefore justified in assuming that the plaintiff's assignor consented to make the shipments on the terms of his order. The claim of the defendant, however, to the effect that he was justified in selling more than the 2,000 kilos on the strength of the cablegram from the plaintiff's assignor that it would ship the 2,000 kilos, is untenable as matter of law, and therefore the plaintiff was entitled to recover on account of the 1,800 kilos.

It follows that the exceptions should be sustained and a new trial granted, with costs to plaintiff to abide the event.

McLAUGHLIN and SCOTT, JJ., concur.

INGRAHAM, P. J. I concur in the opinion of Mr. Justice LAUGHLIN, except in so far as he holds that the transaction as stated

by him constituted an accord and satisfaction as to the 1,288 kilos referred to in the statement of the account on which the balance of 8,000 marks was struck, and for which a remittance was subsequently made. I do not think there was any evidence to justify an accord and satisfaction, or that any consideration existed to sustain such an accord and satisfaction.

I also differ from him with respect to the right of the plaintiff to recover for the 2,000 kilos ordered by the cablegram. I think the plaintiff was entitled to recover the full 15 marks per kilo for all the merchandise delivered. The defendants adopted this method of giving their order. The price fixed by the contract between the parties was 15 marks per kilo; and the telegram as delivered to the plaintiff's assignor contained no limitation as to price.

The views I entertain, however, require a reversal of the judgment, and I therefore concur.