Charles W. Sloan, Respondent, *v.* Anna W. Baird, Appellant.

*Contract — damages for a breach — the value of property which has no market value; how determined — interest is not allowed on unliquidated damages.*

Property is said to have a market value when other property of the same kind has been the subject of purchase and sale, to so great an extent and in so many instances, that the price which is paid for it becomes fixed by the usual course of dealing.

For the purpose of fixing the damages which have resulted from the refusal of the owner to convey a plant for the manufacture of rubber, consisting of a lot, buildings and machinery, under an agreement for its sale at a price named, its value is to be established, not by determining the value of the separate elements of which the property is composed, but by its value as a whole at the time of the breach, in the place where it was located, for the purpose for which it was intended, and for which it was to be used.

Where property is of a special kind and fitted for a peculiar business, and its value depends largely upon its location and condition, that value must necessarily be ascertained by a consideration of the particular property, having in view its nature, kind, original cost, its earning value and its condition at the time when its value is to be ascertained. In that case evidence may be given as to the cost of the property, its deterioration, its location with reference to the purposes for which it is intended, its adaptability for those purposes, its earning capacity, its present condition; and such evidence may properly be supplemented by the testimony of experts who are familiar with the property itself and accustomed to form a judgment of the value of such property.

In actions for the breach of such a contract, where the damages are unliquidated, interest cannot be allowed upon the damages unless they are such as might be easily ascertainable and computed at the time of the breach, from facts which are then known to exist.

APPEAL by the defendant, Anna W. Baird, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 4th day of February, 1896, upon the report of a referee.

*William B. Hornblower* and *Albert H. Atterbury*, for the appellant.

*Julien T. Davies* and *Brainard Tolles*, for the respondent.

RUMSEY, J.:

Shortly before the 16th day of November, 1892, Mrs. Baird had become the owner of certain land, buildings and machinery in the buildings, which constituted what was known as the plant of the Hamilton Rubber Company of Trenton, N. J. On that day she gave to the plaintiff a contract by which she agreed to sell the property to him for the sum of $50,000, to be paid as more particularly specified in the contract, and she gave him an option for ten days from that date to accept the offer to sell contained in her contract. Within the prescribed time the plaintiff closed the option, accepted the terms of the contract and tendered payment according to its provisions, and demanded a conveyance of the property, but in the meantime Mrs. Baird had changed her mind, for some reason which is not made known, and had seen fit to convey the property to one MacGowan for the same price for which she had agreed to sell it to Sloan. She, therefore, had put it out of her power to perform the contract with Sloan, and refused to do so. The plaintiff thereupon brought this action to recover the damages he had sustained by the loss of his contract. All the foregoing facts are conceded.

It is not disputed that the plaintiff is entitled to damages for breach of his contract, nor is there any question made by counsel as to the measure of damages, which it is agreed is the difference between the price which the plaintiff agreed to pay and the value of the property which was to be conveyed, if that was greater than

the contract price.  The referee, upon very conflicting evidence, found that the actual value of the property at the time when Mrs. Baird had agreed to sell it to Sloan was $65,500, and he directed a judgment in favor of the plaintiff for damages awarded upon that basis, with interest from the 13th day of December, 1892, which seems to have been the date on which the action was begun.  It is not disputed here that the referee adopted the correct rule of damages, and the serious question presented is whether the referee erred in fixing the value of the property at the time of the sale at the sum of $65,500, and consequently estimating the damages at the amount at which he put them.

The property which was the subject of the sale was not property which could be said to have any market value.  Property is said to have a market value when other property of the same kind has been the subject of purchase and sale to so great an extent and in so many instances that the price which is paid for it becomes fixed by the usual course of dealing.  But manifestly market value can be established in that way only where property of the same sort as that which is the subject of the action, is customarily dealt in.  Where property is of a special kind and fitted for a peculiar business, and its value depends largely upon its location and condition, that value must necessarily be ascertained by a consideration of the particular property, having in view its nature, kind, original cost, its earning value and its condition at the time when its value is to be ascertained.  In that case evidence may be given as to the cost of the property, its deterioration, its location with reference to the purposes for which it is intended, its adaptability for those purposes, its earning capacity, its present condition, and such evidence may properly be supplemented by the testimony of experts who are familiar with the property itself and accustomed to form a judgment of the value of such property, and upon all that evidence it would be for the referee to come to a conclusion as to what the value was.  In such a case as this, where the value of the plant must depend largely upon the condition of the machinery which composes a great part of it, that particular portion of the plant is peculiarly subject to deterioration, by means of which it value may be impaired.  Its value too is largely dependent upon the question whether the machinery itself is of the latest kind

and pattern, or whether new machinery has been invented for the same purposes by means of which the work necessary to be done can be accomplished more rapidly and more economically. For these reasons, in examining the value of property of this kind, it is almost necessary that special investigation should be had into the value of the machinery, and it is proper for the referee to take into consideration testimony upon that subject, not for the purpose of fixing the value of the machinery separate from the value of the plant, but for the purpose of getting an accurate notion of its condition and value to enable him to come to a correct conclusion as to the worth of the whole property taken together. The question in such cases is not what is the value of the separate elements of which the property is composed, but, taking the property as it stands, in the place where it is located, as a whole, for the purpose for which it was intended and for which it is to be used, what is its real value at the time in question?

It is complained here that the referee did not use that means of ascertaining the value of the property, but it is said that he fixed the value of the land and the buildings and the machinery separately from each other and reached his conclusion as to the value of the whole by adding together his estimate of the separate values of the three component parts of which the property was composed. We do not think that the clause in his opinion which is referred to to establish that proposition, necessarily bears it out. It is quite true that the referee in his opinion puts an estimate upon the value of the land and the value of the buildings and the value of the machinery separately from each other, but he does this incidentally in his statement of the conditions under which he reached the ultimate fact to be decided by him, which was the true value of the whole plant. But, even if the referee had pursued the method objected to by the appellant and had ascertained the values of the three component parts of the plant separately and fixed the value of the whole plant by adding the three elements together, it would not necessarily follow that his conclusion was not correct. The question still would be whether he reached a correct conclusion upon the evidence, and not whether his method of reaching that conclusion was one which the court agreed with.

The evidence in this case was very considerable in volume. It

appeared that the plant in question had been established and in operation for many years and had been used almost continuously until shortly before it was purchased by the defendant in 1892. The original cost of the plant of course was very much more than the value which the referee adopted. There was no dispute that it had deteriorated somewhat in value, nor that portions of the plant could now be bought for a less sum than they cost when they were first put in. Whether or not the property was in such condition in November, 1892, that it would do good work, and how valuable it was for the purposes for which it was then intended, was a matter as to which there was very considerable conflict among the witnesses. Several witnesses for the plaintiff who were familiar with the condition of the property and had occasion to know very much of its working capacity, testified that it was practically in good working condition and with a very small expense could be, and was, fitted to do business. Other witnesses sworn in the interest of the defendant testified that the property was in very poor condition, and that it would and did require a large amount of money to so repair it that economical and profitable work could be done in it. The testimony of the witnesses as to these facts, which were within their personal knowledge, was not only conflicting, but it was so conflicting as to be entirely irreconcilable. In addition to the testimony as to these facts, there was produced on each side the testimony of experts who were permitted to give, after having examined the property, their judgment as to its value. Some of these experts had had greater opportunities for examination of the property and were better acquainted with its condition than others, and it is apparent that in regard to the evidence of that class, the testimony given by the expert witnesses sworn by the plaintiff was much more satisfactory than the evidence of the same kind of witnesses produced on the part of the defendant. But testimony of that kind is in its nature quite unsatisfactory, especially to an appellate court which is asked to review conclusions based upon it. The weight to be given to the testimony of expert witnesses must, in the nature of things, depend very largely upon their general intelligence and manner of answering questions, the ability of the witnesses to form correct conclusions from facts, and their willingness to abide by the necessary inferences from the facts which are stated. All these

things are almost necessarily eliminated from a printed case; and, after a case has been reduced to narrative form a court has no opportunity to judge of the way in which the questions were answered, the intelligence of the witness, nor of his bearing upon the stand under examination, which is a very important element in deciding as to the weight which his testimony should receive. For these reasons the conclusion reached by a careful referee upon that kind of testimony must have great weight, and should almost necessarily be followed unless it is made to appear clearly that it was erroneous.

It is very true that the referee here did not accept the conclusions of any of the expert witnesses as to the value of this property, nor was it necessary that he should do so. Such testimony is given, not to be conclusive upon the mind of the tribunal which passes upon the facts, but to enable it to judge understandingly with regard to the facts presented to it because of the aid which it receives by the intelligent conclusion of the witnesses upon the same state of facts.

We have examined with some care the testimony upon which the referee based his conclusions, and we are satisfied that the conclusion was a proper one, and that the amount of $65,500, which he concluded was the fair value of this property at the time when Mrs. Baird agreed to sell it to the plaintiff, was correct. For that reason the sum which he gave to the plaintiff as damages for the breach of the contract was not too great.

But we are not satisfied that the plaintiff was entitled to interest upon that sum. On the contrary, the trend of the authorities in this State is decidedly against the allowance of interest in such cases. As is said by Judge EARL, in *White* v. *Miller* (78 N. Y. 393), the law upon the question of the allowance of interest in common-law actions is in an exceedingly unsatisfactory state. But whatever may be the uncertainties of the law on that subject, one rule is clearly to be deduced from the authorities, and that is that in actions for the breach of a contract, where the damages are unliquidated, interest is not to be allowed upon the damages, unless they are such as might be easily ascertainable and computed, at the time of the breach, from facts which are then known to exist. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 114 N. Y. 331; *McMaster* v. *The State*, 108 id. 542.) Within this rule the case at bar was not one in which

interest upon the damages should have been allowed, and the allowance by the referee was error. The amount of interest allowed was $2,853.54 as of the 13th day of December, 1892.

The judgment should, therefore, be modified by striking out the sum of $2,853.54 as of the 13th day of December, 1892, and as modified should be affirmed, with costs to neither party in this court.

BARRETT, PATTERSON, O'BRIEN and INGRAHAM, JJ., concurred.

Judgment modified as directed in opinion, and affirmed as modified, without costs to either party.