(37 Misc. Rep. 96.)

NOBLE v. AMERICAN THREE COLOR CO.

(Supreme Court, Special Term, New York County. January, 1902.)

1. BREACH OF CONTRACT—DAMAGES.
    In an action for breach of contract, a loss of profits arising therefrom, dependent upon numerous and changing contingencies, cannot be recovered, unless plaintiff clearly shows that such loss was directly attributable to the nonfulfillment of the contract.

2. SAME.
    In an action for breach of contract to furnish certain catalogues, plaintiff must show either an attempt to procure other catalogues, or that it was impossible to do so, or some fact to take the case out of the general rule that plaintiff must have so acted as to have made his damages as small as possible.

Action by Frank T. Noble against the American Three Color Company. Attachment reduced on motion.

A. S. Gilbert, for plaintiff.
Gould & Wilkie, for defendant.

LEVENTRITT, J. Remoteness and uncertainty characterizes the plaintiff's proof by affidavit of his alleged gains prevented by the defendant's alleged breach of contract. Profits are ordinarily excluded in estimating damages, for the reason that: (1) "In the greater number of cases such profits are too dependent upon nu-

merous and changing contingencies to constitute a definite and trustworthy measure of damages; (2) because such loss of profits is ordinarily remote, and not the direct and immediate result of a nonfulfillment of the contract; (3) the engagement to pay such loss of profits, in cases of default in performance, does not form a part of the contract, nor can it be said, from its nature and terms, that it was within the contemplation of the parties." Witherbee v. Meyer, 155 N. Y. 446, 453, 50 N. E. 58. Where the profits are not uncertain, speculative, or contingent, and the contract is one by reason of which a party "would have received the profits of a business in which he was engaged, under his contract he is entitled to recover as a portion of his damages the profits which he would have received." Lavens v. Lieb, 12 App. Div. 487, 489, 42 N. Y. Supp. 901. Failure to recover profits is more often due to absence of proof than to absence of a suitable rule of law. So in this case, even conceding that the plaintiff brings himself within the general principle of the authorities he invokes, and that his prospective profits were, although not provided for by the terms of the contract, within the contemplation of the parties, he fails to establish them with sufficient certainty.

Briefly stated, the plaintiff's cause of action is for damages arising from the defendant's failure to furnish proper catalogues to the plaintiff's assignors pursuant to agreement. It appears that plaintiff's assignors, dealers in carpets, curtains, laces, and other household goods, conducted their business "mainly through catalogues mailed to various people throughout the United States, the persons receiving such catalogues purchasing merchandise without a personal inspection of such article, but relying entirely upon the cuts representing the same." Order slips were inclosed in the catalogues. For the year 1901, 25,000 catalogues were ordered, and it is alleged that the defendant knew in what manner the business of the plaintiff's assignors was carried on, and that they knew that reliance was "mainly upon the said catalogues" to sell the merchandise. The affidavit in support of the attachment was made by one of the assignors, who swears that "a large proportion of the business done by my firm is through catalogues sent and mailed to various persons"; that the first catalogues were good; that in a subsequent shipment defects were noticed which were called to the attention of the defendant; that the "next time" his attention was called to it by a customer, who wrote "that the catalogues were useless." The plaintiff's assignors thereupon demanded that the defendant take back the catalogues and replace them with others, but the defendant refused to do so. Of the 24,860 catalogues delivered, 10,574 were found to be absolutely worthless, and were never issued. The purchase price of them was $2,255.78. All the catalogues have been paid for.

While the attachment must stand so far as this item of $2,255.78 is concerned, I am satisfied it must be reduced so far as it includes in the estimated damage the loss of profits. The plaintiff's assignor, who makes the main affidavit, computes them in this manner. After alleging loss of profit which might otherwise have been

secured "if the catalogues had been in perfect condition which would permit of their use and examination by customers," and after further alleging that the firm's business was conducted in 1901 upon the same lines as in 1900 and 1899, he shows that in the year 1899, when 18,186 catalogues were issued, merchandise "referred to in those catalogues" was sold amounting to $71,875; that in the year 1900, when 25,352 were issued, merchandise "included in those catalogues" was sold amounting to $144,423; that in 1901, when 22,580 catalogues, using some remaining from the year before, were issued, merchandise "referred to in that catalogue" amounting to only $76,122 was sold. The affiant swears, further, that from experience and by computation he knows that the percentage of profit has been at least 10 per cent. of the aggregate sales; that on this basis there was a net loss in 1901 of $6,830.10 from the results shown in 1900, and the damage in loss of profits is laid at that amount.

Obviously, this method of computation is entirely too uncertain and inaccurate. The affidavit states that there is "no possible way of calculating damage except by comparison of yearly results." This may well be, but the comparison does not yield definiteness and certainty. Waiving all question whether the prospective profit can be treated as an element of damage within the contemplation of the parties, it is clear from the statements in the complaint and affidavit that the loss of profits is not traced directly to the defective character of the catalogue. Where it is alleged that the business is done "mainly through catalogues," or that a "large proportion" of the business is done in that manner, it is obvious that no basis is furnished for separating that item of the business from the direct sales. The total amount of the sales specified for each of the three years, taken as a basis of comparison, does not state the sales as resulting exclusively from the orders contained in the catalogues or otherwise based thereon. It is stated that the merchandise sold was "referred to in those catalogues" or "included in those catalogues," but it is not stated that none of the sales on which the computation of profit is made resulted directly. It is quite possible that the loss of sales in 1901 was in the item of direct sales rather than in the catalogue sales.

A second item of uncertainty and inaccuracy is given by a comparison of the total number of catalogues issued in 1900 and 1901. In 1900, with 25,352 catalogues, the sales were almost double those of 1901, when 22,580 catalogues—only some 2,000 odd less—were issued. Of the 24,860 catalogues furnished by the defendant for that year, 10,574 were concededly not issued on the ground of their alleged worthlessness. Therefore only about 14,000 of the defendant's catalogues were issued in 1901 while at least 8,000 were obtained from other sources. It is a gratuitous assumption on the papers furnished to ascribe the loss of sales to the 14,000 rather than the 8,000. Non constat, but that the $76,000 of sales are traceable to the 14,000, and not to the 8,000.

Further items of uncertainty are that it does not appear that prices were the same in all the catalogues; that designs were identical; that loss of business was not due to change in styles, or to

similar conditions and circumstances.  In a word, the loss of profits in 1901 is not clearly and unmistakably traced to the alleged defects in the catalogues.  Even beyond this, the plaintiff has not brought himself within the rule laid down in Parsons v. Sutton, 66 N. Y. 92.  The parties who have suffered the damage have not shown that they have so acted as to make their damage as small as they reasonably could.  "He must not by inattention, want of care, or inexcusable negligence permit his damages to grow, and then charge it all to the other party."  In this case the papers do not show any attempts to procure other catalogues, or that it was impossible to do so, or that the catalogues could be issued only at one particular time, or any one of the many facts to take the case out of the general rule.  The attachment must be reduced as indicated.

Attachment reduced as indicated.