### BRADLEY v. McDONALD et al.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. CONTRACTS (§ 187*)—PARTIES—AGREEMENT FOR THE BENEFIT OF THIRD PERSONS.

Where a contractor assigned to a company all payments to become due him under the contract, and the company agreed to pay therefrom all amounts due subcontractors and others, the subcontractors can recover against the company for the amount of their claims.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 798–807; Dec. Dig. § 187.*]

2. CONTRACTS (§ 290*)—ACTIONS FOR BREACH—CONDITIONS PRECEDENT—CERTIFICATE OF AMOUNT DUE—WAIVER.

Where the requirement of a construction contract for a certificate of the defendant's chief engineer for the payment of extra compensation has been waived by agreement of the parties, the contractor may bring an action on the contract before the certificate is issued.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1317; Dec. Dig. § 290.*]

3. EVIDENCE (§ 178*)—DOCUMENTARY EVIDENCE—BOOKS OF ACCOUNT.

Where the defendant prescribed a method of keeping account of extra work done by a subcontractor by means of daily slips, approved by defendant's engineer, and then entered in the books of the subcontractor, the books may be received in evidence after the slips have been lost or destroyed, especially where the defendant first offered some of the books for the purpose of showing inaccuracies therein after being warned by the referee that by so doing he was making all the books material.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 580–594; Dec. Dig. § 178.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. ACCOUNT STATED (§ 6*)—IMPLIED ASSENT OF PARTY CHARGED—RETENTION WITHOUT OBJECTION.

Where the defendant retained monthly statements as to extra work sent by a subcontractor according to the agreed system of accounting, without objecting to them, they constituted an account stated.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 30–39; Dec. Dig. § .6.*]

5. INTEREST (§ 19*)—UNLIQUIDATED DEMANDS—AMOUNT ASCERTAINABLE BY COMPUTATION.

Where it was agreed that extra work under a contract should be paid for at the reasonable value of the labor and materials, plus a percentage for superintendence and profit, and there was no dispute concerning the character of the work claimed to be extra work, the contractor is entitled to interest from the time the compensation became due, since the elements by which the compensation was to be computed were definitely fixed.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 35–40; Dec. Dig. § 19.*]

Appeal from Judgment on Report of Referee.

Action by William Bradley against Georgie A. McDonald, as executrix, and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, DOWLING, CLARKE, and HOTCHKISS, JJ.

Delancey Nicoll and Alfred E. Mudge, both of New York City, for appellants.

Thomas F. Conway, of New York City, for respondent.

DOWLING, J. This is an appeal from a judgment in the sum of $502,996.08, of which $83,732.54 has been recovered by the plaintiff as a balance due him for regular work pursuant to the terms of a contract, and the remainder is for extra and additional work in connection with, and in addition to, the performance of the contract.

John B. McDonald had entered into a contract with the city of New York, acting by the board of rapid transit railroad commissioners for said city, dated February 21, 1900, for the construction of the rapid transit railroad popularly known as the "Subway," in the city of New York, for the aggregate sum of $35,000,000, with certain additional sums for terminals and real estate. The defendant Rapid Transit Subway Construction Company is a domestic corporation organized for the purpose of aiding in the construction of rapid transit railroads in said city, and was the principal surety upon the bond required to be given by McDonald to the city to insure the construction of the subway. On February 21, 1900, the two defendants herein entered into an agreement in anticipation of the execution of the agreement between McDonald and the city, by which, among other things, the contractor, McDonald, assigned to the company all payments which might become due him from time to time under said contract, and the company agreed to pay out, out of the moneys so received, so far as the same shall be sufficient for that purpose, all amounts due and payable to subcontractors and others by the contractor for work done or materials fur-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nished in carrying out the work required by said contract when and as the same became due.

[1] Those who became subcontractors under McDonald were in contemplation by the parties and intended to be benefited by this provision as fully as if they had been specifically named therein, and are therefore entitled to hold the Construction Company liable for their claims. Pond v. New Rochelle Water Co., 183 N. Y. 330, 76 N. E. 211, 1 L. R. A. (N. S.) 958, 5 Ann. Cas. 504. On July 31, 1900, plaintiff and McDonald entered into a subcontract, by which the plaintiff undertook, in strict conformity with the specifications and plans and in strict conformity with all of the provisions of the contract, to furnish all the machinery, materials, tools, and labor necessary, and in a good, substantial and workmanlike manner to construct, complete, and finish the work therein specified on said rapid transit railroad embraced in subsection No. 6, beginning at the center of Sixtieth street and extending to the center of 104th street, on Broadway, being subdivisions A and B of said section. As compensation for the services, materials, and labor required by the contract plaintiff was to receive certain specified sums for certain defined units, as follows:

| | | |
|---|---|---|
| Earth excavation, including removal and refill........ | $ 2.00 | per cubic yard |
| Rock excavation, south of center line of Eighty-Second street, including removal.......................... | 3.40 | " |
| Rock excavation, north of center line of Eighty-Second street, including removal.......................... | 3.25 | " |
| Hauling, erecting in place and painting all steel and iron work per ton of 2000 lbs...................... | 13.00 | per ton |
| Portland cement concrete, including painting or plastering ............................................. | 8.00 | per cubic yard |
| Natural cement concrete, including painting or plastering ............................................. | 7.25 | " |
| Common brick masonry.............................. | 12.00 | " |
| Facing brick masonry.............................. | 25.00 | " |
| Stone pedestal masonry............................. | 35.00 | " |
| Cut stone masonry................................. | 35.00 | " |
| Restoring street surface and repaving................. | 3.50 | per square yard |
| Restoring park surface and repaving................. | 1.75 | " |
| Vault lines........................................ | 20.00 | |

In addition thereto, plaintiff was to receive the sum of $160,000 for the construction and reconstruction of sewers along and off the route of the railway, stone, pipe, or tile drains, all water, gas, and other pipes, electric cable conduits, vaults, and subways, and other surface and subsurface structures as shown on plans, including excavation, backfilling and restoring street surface, except trenches for sewers along the route of the railway and adjoining the said railway, which were to be paid for at the prices therein provided for excavation and restoring street surface. It has been found that the plaintiff completed his contract in good and workmanlike manner, as required by its terms, on or before October 24, 1904. It has also been found that a balance was due upon the original contract amounting to the sum hereinbefore stated. It further appears that the construction of this underground railroad involved work of a character and magnitude theretofore unequaled, and even with the assistance of the best engineering talent

procurable it was realized that difficulties would be encountered in the progress of construction which could not be wholly foreseen, and which would require alterations and changes as the work progressed, and which would as well call for extra work quite outside of the contract. That these fears were more than justified the record in this case discloses, and even the best expert advice and the most careful scrutiny of existing data failed to adequately indicate all the obstructions and difficulties which had to be met and overcome in the progress of the work. Therefore the contract between the plaintiff and the defendant contained the following provisions: First. That it was understood and agreed that as the work of constructing the railroad progressed changes might be made in the plans and specifications which might radically alter the amount of work to be done or amount of materials to be furnished under said contract, and the subcontractor agreed to be bound by such changes as might be made by the contractor with the approval of the board of rapid transit railroad commissioners. Second. It was stated to be distinctly understood that said board might require additional work done or additional materials furnished to those set forth in the plans of the railroad referred to in the contract, and might also require certain work and materials therein contemplated to be omitted; where additional work and materials were required, the reasonable value of the same was to be additionally paid to the subcontractor, and, where work or materials contemplated under the contract were omitted, reasonable deductions should be made for the same, such additional value or amount of deduction to be computed at not more than the same rate of compensation for the same class of work as is fixed in this contract, and the values in both cases to be determined by the chief engineer of the Rapid Transit Subway Construction Company, whose decision was to be final and binding upon both parties thereto. Third. The subcontractor was to become entitled to payment for additional work done, or material furnished, only upon the determination of the chief engineer of the board of rapid transit railroad commissioners, as shown by special plans and specifications to be issued and countersigned by him, and upon the certificate of the chief engineer of the Construction Company. Under the contract, and in addition to the work covered thereby, and at the request of the defendant McDonald, and under his direction, and upon a similar request from the Construction Company, plaintiff performed additional work and extra work to that called for by the contract, a large part of the same being work which did not appear upon the plans and specifications upon which plaintiff's contract was based, and other portions of the same being work which, although appearing upon the plans, was required to be done in a different manner, and of a different kind, because of changes in the plans made by or under the direction of the defendant McDonald, or of the Construction Company. When such extra or additional work was first required, and as it developed from time to time, the question of whether it was extra or additional work, or work properly called for by the contract, was taken up and discussed between the plaintiff and McDonald, and the question settled regarding the character of the work so done. This extra work began in

the fall of 1900, and as the work upon the section progressed the amount of extra work increased. So large did this character of work become that, after about $12,000 thereof had been charged up, it was deemed desirable by the defendants to change the method of keeping the account thereof. Theretofore the extra work had been entered on daily blue slips marked "Extra Work," signed by the plaintiff's foremen and O. K.'d by his superintendents, but not furnished daily to the defendants nor entered upon any books, but billed direct to the defendants and retained by them. No question arises as to the correctness of these bills. But realizing that the extra work was inevitable, and that it was bound to increase to large proportions, Moore, the resident engineer representing the defendants on this section, devised a system by which all extra work was entered on white slips which were prepared by the foremen, O. K.'d by the superintendents, sent to the plaintiff's office daily, and entered daily upon his books, copy of such entries furnished daily to Moore for verification by him, and monthly summaries made upon plaintiff's books and copies thereof also furnished monthly to Moore, the resident engineer. Plaintiff and McDonald agreed upon this method of keeping track of all extra or additional work in the latter part of September or early part of October, 1901, and at that time it was agreed between plaintiff and McDonald that as to all extra or additional work done by the former it should be kept on what is known as a "force account" basis; that is, plaintiff was to receive the actual cost of the labor, plus 15 per cent. for superintendence or profit, and the actual cost of the materials to be used, plus 10 per cent. for superintendence or profit. Under the direction of Moore, who had conferred with McDonald and Deyo, the chief engineer of the Construction Company, plaintiff furnished these white slips to his foremen, who entered upon the same the number of men employed, and the time for which they were employed for various classes, as well as the quantity and kind of material used by him and his gang each day, the number and time of teams used, loads of dirt carried away, etc. All superintendents were required to ascertain the correctness of the slip on the very evening on which it was turned in by the foreman, and place their O. K. if correct. Moore received daily a copy of the entries upon the books made from these slips and verified the same, which he was in the better position to do while the trenches were open and the work exposed, and at the end of each month a copy of the summary was sent to the Construction Company and again verified by Moore. Thus, at the end of each month, the plaintiff made a complete summary upon its books of the daily entries made from the white slips and furnished the same to the defendant company. The daily entries and monthly summaries were verified by the defendant's checkers and by Moore, and occasionally corrections were found necessary to be made, which were promptly entered and made upon plaintiff's records by Moore's request. Moore was intrusted with the additional duty of keeping track of all extra and additional work, which had also first to be determined by him, as he had full power and authority to do so by reason of his position with the defendants. No question ever arose either as to the character of the

work as extra work, or as to the correctness of the bills, which had to be approved by Moore until August, 1903, when defendants instructed him to cease putting his approval upon the bills in writing, but required him to still exercise the same care and perform the same duties in verifying them. No question was ever raised by the defendants upon the final receipt of the monthly summaries that they were not correct, and upon this record the burden is overwhelmingly in favor of the plaintiff that the amounts claimed by him represent the actual amounts of work done or materials furnished, plus the percentages hereinbefore specified. The summaries received by the defendant company were retained by it without objection, and the system adopted seems to have answered every expectation of those who had formulated it. There is documentary evidence in this case which corroborates the theory of the plaintiff and the testimony of the witness Moore as to the character of this work as extra work. The original drawings accompanying the contract were known as supplementary "D" drawings. Upon them appear the very notations contemporaneously made by Moore, showing the character of the work recovered for herein as extra work, apart from and outside the contract. Furthermore, the very answers of the defendants herein admitted as to all the causes of action upon which recovery has been had except the tenth, eleventh, and twelfth, amounting to $50,730, that extra work had been done by the plaintiff upon the direction and requirement of defendants and of the board of rapid transit commissioners and their engineers, by their authority, and upon plans furnished and provided by said engineers; and that as provided and authorized in said contract the plaintiff performed the work and furnished the materials additional to that shown in the plans set forth in the complaint in each instance. In fact, the character of the work claimed upon herein as extra work cannot be, and never has been, successfully controverted. Unless some other reason exists why plaintiff should not recover therefor, the only question would be the amount of work done to which the units of prices should be applied. Upon the trial of this action, it was conceded for the defendants that there was no dispute as to what the contract meant in its operation, for wherever extra work was required, of a character not described in the list of unit prices, the practice followed throughout the construction of the subway, including the Bradley contract, was to allow the reasonable value of the labor, plus 15 per cent. for profit or superintendence, and the reasonable value of the materials furnished, plus 10 per cent. for profit or superintendence. It has been admitted by the answers of the defendants, as well as upon the trial, that the Construction Company has in its hands sufficient moneys received from the city under the assignment from McDonald to pay the plaintiff and all other subcontractors. It is unnecessary to enter at further detail into the facts disclosed by this voluminous record, for, as we view it, the plaintiff's contention, both as to the character of the work done by him as extra work and as to the amount and value thereof, has been convincingly established. The report of the learned referee herein is so full and persuasive, supported as it is by the testimony in the case, most of it undisputed, and much of it supported by

documentary evidence, that we deem it unnecessary to discuss further anything save a few of the objections urged by the appellants.

[2] It is claimed that plaintiff cannot recover, as no certificate was issued by the chief engineer of the defendant company until after the commencement of this action. We think the record supports beyond dispute the conclusions of the referee that as to the extra work the issuance of this certificate had been waived by the defendants, who by the mutual agreement of all the parties substituted for it the force account system before described. If such a certificate had been required to be obtained by plaintiff, its absence would have been explained by the fact that, as found by the referee, it was wrongfully, unreasonably, and illegally withheld and refused.

[3, 4] It is contended that it was error to receive in evidence the books of the plaintiff showing the entries made from the white slips, inasmuch as the slips themselves had been lost or destroyed, and they are claimed to have been the primary evidence which alone was admissible. It is significant that, although the defendant had been furnished daily with copies of the entries from the slips, they did not preserve them and could not produce them upon the trial. Every superintendent was called by plaintiff to testify to the accuracy of the accounts, and most of the foremen as well. Neither Moore nor any one else produced as a witness has sought to impeach their accuracy. In repeated discussions over plaintiff's claim no attack was made upon their correctness. In fact, at various times the defendant company has paid on account of these claims for extra work nearly $400,000, although $270,000 so paid was by consent of the parties withdrawn therefrom and applied on account of the original contractual indebtedness. From the evidence disclosed by this record, such an attack upon the claims would have been futile. Here was a great work in which a method was specifically adopted under the defendants' direction, and by their resident engineer, for keeping track of the cost of work which he had first determined to be extra work, a determination entirely within his power to make. This record discloses no reason for doubting the good faith of his decisions, or the credibility of his testimony. The defendants' counsel himself first offered in evidence certain of the plaintiff's books, evidently believing that he could show inaccuracies therein, which he did not succeed in doing. He persisted in this offer, although warned by the referee that by so doing he was making all the books material. However, in view of plaintiff's faithful adherence to the course of keeping accounts devised for him by the defendants, not only were the books of account from which the monthly statements were prepared, and which were based upon the original white slips, admissible in evidence, but the retention without objection by the defendants of the monthly statements constituted an account stated upon which plaintiff might well have relied without going into the accuracy of the account themselves. See Spellman v. Muehlfeld, 166 N. Y. 245, 59 N. E. 817; Rathborne v. Hatch, 80 App. Div. 117, 80 N. Y. Supp. 347. Electing not to do so, he has proven in detail his right to the full recovery given him. It is also claimed that error was committed by the receipt in evidence of certain admissions made by

the defendant McDonald as to the amount the plaintiff was entitled to recover for extra work in the course of a conversation, at which, among others, Moore was present.  At none of these meetings was the plaintiff present, nor any one with authority to represent him, and, although Moore was then in his employ as an engineer, it does not appear that he had any authority to make any compromise of his claims for him.  When the testimony as to these admissions by McDonald was offered, which was during the latter's lifetime, no objection was made to the testimony on the ground that it was made during the course of a negotiation for a settlement, which is the ground now urged, and upon which defendants based the motion to strike the testimony out months after it was given, but it was objected to on the ground that "it became embodied in a written document, as it was dictated to a stenographer, and, if nothing more was done than to dictate it to a stenographer, it was not competent or binding."  The further ground was urged that this was "a makeshift method to secure a certain result by the admissions."  These objections were properly overruled.  We think, as well, that the record discloses no reason for believing that the statements were made by McDonald in the course of any proposed settlement or compromise of plaintiff's claims, but were voluntary statements offered by him acknowledging the justice of plaintiff's claim to a very large extent, and which acknowledgments were repeated by him on a number of other occasions, and confirmed by the course of dealings of the parties, and by the concessions of their then attorney.

[5] The final objection which we are urged to consider is against the awarding of any interest upon plaintiff's claim.  The plaintiff's contract was completed on October 24, 1904.  The referee has allowed interest as to all save the eleventh, twelfth, and sixteenth causes of action from January 25, 1905, being 90 days after the time of completion, as under the provisions of the contract payment was to be made to the plaintiff within 90 days after the completion of the work and its acceptance.  As the work was accepted upon its completion, this would seem to be the proper date from which to start the running of interest if it is to be allowed at all.  The remaining three claims have been limited in the allowance of interest to the time when the request for the certificate as to them was made and refused, namely, June 5, 1906.  These claims were for excavation and sheathing.  While it may be difficult to lay down a general rule applicable to the allowance of interest upon unliquidated claims, since much must depend upon the particular circumstances of each case, we think that there are certain general principles well defined and settled by authority which control the determination of the right to interest in this particular action.  As a general rule, interest is not recoverable upon unliquidated damages.  Where, however, although a demand is unliquidated, the amount thereof can be readily ascertained by mere computation, interest thereon will be allowed.  22 Cyc. p. 1513.  In McMahon v. N. Y. & Erie R. R. Co., 20 N. Y. 469, the court said:

"The old common-law rule, which required that a demand should be liquidated, or its amount in some way ascertained before interest could be allowed,

has been modified by general consent, so far as to hold that, if the amount is capable of being ascertained by mere computation, then it shall carry interest; and this court in the case of Van Rensselaer v. Jewett, 2 Comst. [2 N. Y.] 135 [51 Am. Dec. 275], went a step further, and allowed interest upon an unliquidated demand, the amount of which could be ascertained by computation, together with a reference to well established market values, because such values in many cases are so nearly certain that it would be possible for the debtor to obtain some proximate knowledge of how much he was to pay."

In White v. Miller, 78 N. Y. 399, 34 Am. Rep. 544, the cases upon the subject of interest were collected and discussed, and the conclusion reached that there was no authority holding that where the claim sounds solely in damages, is unliquidated and contested, and the amount so uncertain that a demand cannot set the interest running, that it can be set running by the commencement of the action. In Mansfield v. N. Y. C. & H. R. R. R. Co., 114 N. Y. 331, 21 N. E. 735, 1037, 4 L. R. A. 566, interest upon an unliquidated claim was not allowed because it was uncertain in amount and speculative in character. In Gray v. Central R. R. Co. of New Jersey, 157 N. Y. 483, 52 N. E. 555, it was said (that being an action for the recovery of unliquidated damages) that whether interest was recoverable therein depended upon how far the plaintiff's demand was such that it was capable of being ascertained, or computed, if only approximately, by reference to established market values. In Sweeny v. City of New York, 173 N. Y. 414, 66 N. E. 101, the court said:

"The claim now before us is not so peculiar in its character as to take it without the general rule. The price to be paid for each class of labor or material was fixed by the contract, and the amount due to the plaintiffs was merely a matter of computation. If there was difficulty in ascertaining the quantities of labor and material furnished, it proceeded from the failure of either party to keep accurate account of the work done. Doubtless this to some extent placed the city at the mercy of the contractors, and it had to rely on their integrity."

The right of the contractor to recover in that case was upheld. In Cutter v. Gudebrod Bros. Co., 190 N. Y. 252, 83 N. E. 16, the allowance of interest upon profits recovered by plaintiffs was affirmed upon the ground that the amount thereof was capable of ascertainment by the defendant at the time of the sale; he knew the cost of manufacture of each box of goods and the exact sum he allowed to purchasers for discount, and could have ascertained the actual cost incurred by him in making sales. In Sipperly v. Stewart, 50 Barb. 62, it was held that interest is allowable where the values of the work performed and the materials furnished are so nearly certain that it would be possible for the debtor to obtain some proximate knowledge of how much he was to pay. In Sloan v. Baird, 12 App. Div. 481, 42 N. Y. Supp. 38, it was said that, where the damages are unliquidated, interest is not to be allowed unless it is such as to be easily ascertained and computed at the time of the breach from facts then known to exist. In Braas v. Village of Springville, 100 App. Div. 197, 91 N. Y. Supp. 599, it was held that interest was recoverable where unliquidated damages were such that the amount thereof could be made definite and certain within certain rules of computation, in which case it would seem that it can

no more be unliquidated than an open account which the parties have agreed upon. In Roebling's Sons Co. v. City of New York, 110 App. Div. 366, 97 N. Y. Supp. 278, the right of the contractor to recover interest upon the amount due him was sustained, the same to run from a period of 30 days. after the demand for a certificate had been made and refused.

It seems clear, therefore, while upon the facts of individual cases embarrassment may arise as to the application of the rule, that interest upon a claim is to be allowed where the compensation agreed to be paid by the parties to a contract is either definitely fixed by the instrument itself, or the elements by which such compensation is to be determined are therein definitely determined; proof being required only of the amount of services performed, materials furnished, or work done thereunder, so that a mere mathematical computation applied to such proof will then determine the amount of the recovery. In other words, as in this case, where the contract fixes the unit values of particular classes of work so that all that plaintiff had to do was to establish the amount of work done therefor, which he did by a method devised by the other party to the contract, recorded in books to which the defendant had access, and of the entries in which he had copies, interest is properly chargeable upon the balances. Nothing here is left to speculation and defendants at all times could inform themselves of the exact sums they owed plaintiff. It will readily be seen that a denial of the right to interest in such a case as this is putting a premium upon the withholding of moneys justly due and an incentive to the prolongation of litigation which might well end in the ruin of a contractor who had advanced large sums of money, the interest alone upon which, if the principal were long withheld, might in itself involve him in business disaster. It will be noticed that in all the cases cited, as in the one at bar, no opinion or expert evidence was required upon the value of the work or services. The character of the work claimed as herein as extra work was not under the pleadings or the proof at issue, so that the case does not come within the rule laid down in People ex rel. Cranford Co. v. Willcox, 207 N. Y. 743, 101 N. E. 174. There, under the terms of the contract involved, the question was first to be determined whether the relator had done any extra work before the amount of his compensation therefor could be fixed by arbitration, in which case it was held there was no liquidated claim until the amount is fixed by the award.

We find no errors of any kind calling for the reversal or modification of this judgment, which is fully supported by the evidence, and it will therefore be affirmed, with costs. All concur.